WILLIAM NOSTRUM v. ANDREW S. HALLIDAY.

FILED MARCH 21, 1894. No. 5604.

1. **Agency:** EVIDENCE. While evidence of the acts or declarations of a person alleged to be an agent is not admissible for the purpose of establishing the agency, the testimony of such person, if not otherwise incompetent, is admissible for that purpose.

2. **Vendor and Vendee:** STATEMENT AS TO VALUE OF LAND: RESCISSION. As a general rule, a statement by a vendor or his agent in regard to the value of land is merely the expression of an opinion and not a representation of a fact upon the falsity of which an action to rescind may be based.

3. Action to Rescind Contract of Sale: EVIDENCE. In an action to rescind a contract where the above general rule is applicable, evidence of the actual value of the land is immaterial.

4. ———: FALSE REPRESENTATIONS: EVIDENCE: PLATS. In an action to rescind a conveyance of land on the ground of false representations in regard to its character some of the representations relied upon were contained in a plat submitted to the vendee. There was evidence tending to show that the plat had been lost, but another plat was admitted in evidence upon proof by a witness that it was a copy to the best of his knowledge; that he thought his wife made it because it looked like her writing, but did not know who made it or under what circumstances, and he had not compared it with the original. *Held*, That this evidence was insufficient to prove that the plat offered was a copy of the original and that its admission was erroneous.

ERROR from the district court of Saline county. Tried below before BUSH, J.

*E. E. McGintie* and *Robert Ryan,* for plaintiff in error.

*F. I. Foss* and *Palmer & Hendee, contra.*

IRVINE, C.

Prior to the 25th day of September, 1891, Andrew S. Halliday was the owner of the furniture and other personal property in a hotel at Friend, and William Nostrum was the owner of the northwest quarter of section 4, township 3, range 14, in Franklin county. On that day an exchange was effected whereby Halliday took the land in exchange for the hotel property. In November of the same year this action was instituted by Halliday before a justice of the peace in replevin and the hotel property seized under the writ and delivered to Halliday. The appraised value of the property being in excess of the jurisdiction of a justice of the peace, the case was certified to the district court of Saline county and there tried. The result was a verdict and judgment for the plaintiff Halliday.

The theory of Halliday's case was that he had been in-
duced to make the exchange by false representations in re-
gard to the land, and the action was in effect one at law for
the rescission of the contract.    It is somewhat difficult from
the record to analyze the case, the absence of formal
pleadings being probably sufficient to explain the difficulty.
The only representation it is claimed Nostrum made in re-
gard to the land is that it had cost him $2,800, and there
is not a syllable of evidence tending to show that this rep-
resentation was false.    It is claimed, however, that one
Davis was the agent of Nostrum in making the exchange,
and that Davis made certain representations through let-
ters passing chiefly between Davis and one Moeller, the
agent of Halliday.    The first point in controversy is in
regard to Davis' agency, the question being raised upon
assignments of error relating to the admissibility of the
letters referred to.    When these letters were offered and
the objections made there was really no evidence sufficient
to warrant a finding as to the existence of such agency.
All that was made to appear by the plaintiff's testimony
was the fact that Davis had acted in conducting the nego-
tiations, and had introduced the principals who had com-
pleted the negotiations between themselves; and further,
that after the transaction Nostrum had denied making any
representations, to which Halliday made answer that Nos-
trum's agent, Davis, had done so, to which Nostrum re-
plied that Davis was not his agent at the time the trade
was made; that he had been prior to that time, but they
had settled their affairs.    There is also the testimony of
Mr. Moeller, at first that Nostrum had told him that Davis
was his agent, but upon further inquiry he states that all
that Nostrum said was that if Moeller wished to corre-
spond with Nostrum, Davis would know where to find him.
It needs no argument to prove that this evidence was in-
sufficient to establish an agency.    All that it tends to show
is that Davis was instrumental in bringing the parties to-

gether, but at whose instance and upon what authority, or whether upon any authority, does not appear. But Davis himself was called as a witness and stated that he was partly instrumental in bringing the parties together; that he introduced them; and on cross-examination he was asked if Nostrum had left him this land to trade. His answer was, "not especially;" that he and Nostrum "frequently had deals;" that they were both in the same business and helped one another to get trades; that he "was acting in the capacity of his copartner, not as his agent;" and that he was to get a commission if the trade went through. We think this was sufficient to justify the jury in finding that there existed some general authority from Nostrum to Davis to assist in making such trades and justified the court in leaving to the jury the question of agency.

In this connection our attention is called to the case of *Stoll v. Sheldon,* 13 Neb., 207. That case simply holds that an attorney at law, by virtue of his employment to make collections, has no authority to release a surety upon a promissory note; but in the opinion the case of *Graul v. Strutzel,* 53 Ia., 712, is cited as holding that an agent's authority cannot be shown by his own testimony. This was evidently a careless use of language by the court, for what *Graul v. Strutzel* decides is the familiar proposition that an agent's authority cannot be proved by the declarations of the agent, and that was the only question pertinent to the decision of *Stoll v. Sheldon.* The testimony of the agent, where not upon other grounds incompetent, is admissible to prove his authority, but his mere acts or declarations, not brought home to the principal, or ratified by the principal, are not admissible. As nearly as can be gathered, in the absence of formal pleadings of fraud, the representations relied upon as having been made by Davis are as follows: That the Franklin county land was worth $20 per acre; that the buildings were good, the land principally table land, smooth, with living water upon it, making a

good farm; that a large portion of the land was cultivated, and that the land had improvements in the nature of a house, a barn, a windmill, and a tank.    There is sufficient evidence to justify the jury in finding that most of these representations, if made, were false.

Certain depositions were offered in evidence containing testimony as to the actual value of the land, the witnesses swearing that the land was worth about $5 per acre.    This testimony was all received against Nostrum's objections, and its admission is assigned as error.    We think that its admission was erroneous, and prejudicially so.    While this was an action at law, its object was simply a rescission of the contract and not the recovery of damages; therefore, the question of value was immaterial.    It is true that there was evidence that Davis had represented that the land was worth $20 per acre, but as a general rule a representation of this character upon the part of a vendor or his agent is merely an expression of opinion and cannot be made the basis of an action to rescind upon the ground of false representations.    There is nothing in this case to create an exception to the rule.    It was not pretended that Nostrum or Davis had any particular knowledge in regard to the value, or that the situation was such that Halliday was compelled to rely, or justified in relying, upon their opinion.

In one of Davis' letters to Moeller, offered in evidence, he states that he inclosed a description of the land.    Moeller testifies that a plat was enclosed in the letter.    A plat was received in evidence over Nostrum's objections, but it is admitted that this was not the original plat inclosed in the letter.    Moeller testifies that he showed the plat to Halliday and that he afterwards lost it.    The proof of the loss is not very satisfactory, but it was probably sufficient to justify the court in admitting secondary evidence.    But there was not sufficient proof to justify the reception of the plat offered as such secondary evidence.    Moeller says that

it is an exact copy, to the best of his knowledge.   He cannot tell who made it.   He did not compare it with the original; it looks like the original.   He thinks his wife copied it because it looks like her writing.   This is substantially all upon the subject.   It will be observed that it was not shown that the plat was a copy, the person who made it was not produced, and the witness by whom it was proved did not know with certainty who made it or under what circumstances, and did not pretend to say that it was a copy, but merely that it looked like the original plat.

This plat was very material.   One of the principal questions in controversy was as to the character of the land and the extent of the cultivated portion.   The only representations upon this subject are found upon the plat introduced. Another of the representations counted upon was the existence of a windmill.   The only representation as to this windmill is found upon this plat.   A witness testified to a creek cutting through the land, in many places making deep depressions and rendering the surface uneven and broken. Except as to the general statement in one of the letters that the land was smooth and mostly table land, the only representation upon this subject is upon the plat, which shows only a creek passing through the southeast corner of the quarter section.   We think the admission of this plat was erroneous.

Halliday testifies he discovered the fraud within a very few days after the completion of the contract, and complained of it to Nostrum.   An agreement was entered into in writing on October 5, 1891, whereby Halliday was given the privilege of exchanging the Franklin county land before January 1, 1892, for any such lands or city property as Nostrum might own at the time of the agreement or at the time the exchange might be made, to the amount of $2,300. The effect of this agreement is the subject of much argument.   No method was pointed out for selecting the land in exchange or determining its value.   But the question of

57

its validity as an enforceable agreement would probably be
not very material, as there is at least a strong foundation
for argument upon the ground that it constituted an elec-
tion on the part of Halliday to abide by the contract and
retain the land for the purpose of making the exchange
contemplated by the subsequent agreement. We find no
assignment of error, however, sufficient to raise this ques-
tion. No instructions were given upon the subject, but
none was requested by either party, and it is not assigned
as error that the verdict was not sustained by sufficient
evidence or that it was contrary to law.

The sufficiency of the evidence as to Halliday's reliance
upon the representations of Davis might also be commented
upon had it been sufficiently assigned. The point is argued
upon an instruction which omitted this element, but the
instruction complained of did not purport to state all the
elements necessary for a recovery. It only defined what
was necessary in order to constitute a fraudulent misrepre-
sentation, and the following instruction distinctly told the
jury that in order to sustain the action the person to whom
the representation was made must believe it to be true and
act upon the faith of it.

For the errors in the admission of evidence the judg-
ment is

REVERSED.

POST, J., and RYAN, C., not sitting.