MARY FITZGERALD V. KIMBALL BROTHERS COMPANY.

FILED MARCH 22, 1906. No. 14,235.

1. **Principal and Agent:** EVIDENCE. The declarations of an alleged agent are not admissible in evidence for the purpose of establishing or enlarging his authority.

2. **Contract:** EVIDENCE. The authority of an agent to execute a contract cannot be established by evidence of his declarations as to the nature of a conversation carried on between him and his alleged principal by telephone during the negotiations.

3. ———: RATIFICATION. Knowledge by the principal of the material facts is an essential element of an effective ratification by him of the unauthorized act of his agent. *O'Shea v. Rice*, 49 Neb. 893.

4. **Evidence** examined, and *held* insufficient to sustain a finding that the alleged agent had authority to bind the defendant by the contract in suit.

ERROR to the district court for Lancaster county: AL-BERT J. CORNISH, JUDGE. *Reversed.*

*James Manahan* and *T. J. Doyle,* for plaintiff in error.

*Mockett & Polk, contra.*

ALBERT, C.

This is an action on a written contract which purports to have been executed on behalf of the defendant, plaintiff in error, by James Manahan, as her attorney. It is thus signed: "Mary Fitzgerald, Admx., by James Manahan, Atty." The contract provides for the construction of an elevator by the plaintiffs in a building on the property hereafter mentioned, for which the defendant, by the terms of the contract, undertook to pay $850. The plaintiffs performed their part of the contract, and upon the refusal of the defendant to pay the stipulated price brought this action. Whether Mr. Manahan had authority to bind the defendant by the contract in suit was the principal question litigated below. The jury resolved that question

in favor of the plaintiffs and returned a general verdict in their favor. From a judgment thereon the defendant prosecutes proceedings in error.

It appears from the record that in 1901 the defendant was, and for many years had been, administratrix of the estate of her deceased husband, and as such had charge of certain real estate in the city of Lincoln which she leased, managed and kept in a state of repair. Prior to the date of the contract a mortgage on this real estate had been foreclosed in the federal court. A stay of the order of sale was agreed upon whereby the defendant's right to redeem was extended, in the expectation that the property in that time could be sold for more than sufficient to satisfy the decree. The alleged contract was made September 30, 1901, and while this stay was in force. James Manahan, who, it is claimed, signed the contract as defendant's attorney, was at that time, and for many years had been, the attorney and, to some extent, the business adviser of the defendant as administratrix of her husband's estate, and as such had represented her in the foreclosure proceedings just mentioned. According to the testimony adduced on behalf of the plaintiff, Mr. Manahan, acting in his such capacity, participated in the negotiations leading up to the alleged contract, a part of which was conducted by the defendant in person or, at least, in her presence. Afterwards, at the date of the contract, an agent of the plaintiff called at Mr. Manahan's office, with the contract in question ready for the signatures. A Mr. Muldoon, who was bookkeeper and, as is said in the evidence, general office man of the defendant as administratrix, was also present at the time. The defendant at that time had not assented to the contract nor is there any evidence tending to show that up to that time she had authorized Mr. Manahan, or any other person, to enter into the contract either as agent or attorney for her in her representative capacity or otherwise. The plaintiff's agent was produced as a witness for the purpose of showing what occurred at Mr. Manahan's office at the time re-

ferred to, and his testimony is now relied upon as establishing the fact that Mr. Manahan was duly authorized to execute the contract on behalf of the defendant. His examination touching that matter, so far as is material, is as follows: "Q. Was it (the contract) gone over by you, Manahan and Muldoon? A. Yes, sir; it was gone over and talked over and the price fixed. Q. What did Mr. Manahan do after you and he and Muldoon had gone over Exhibit 12 (the contract) on September, 1901? A. He spoke about the price, and called up Mrs. Fitzgerald about the matter. Q. What did Manahan say at that time over the 'phone? A. He stated that Kimball was here with the contract ready to fix up the elevator matter. I don't remember just what words he used, but it was that we were ready to close the matter, and wanted to know if we should go ahead with the contract. Q. After the telephone conversation, what did he say to you? A. He turned around and said that Mrs. Fitzgerald said it was all right. Q. Again, handing you Exhibit 1, I will ask you who signed 'Mary Fitzgerald, Admx, by James Manahan, Atty,' if you know? A. Mr. Manahan signed it." This evidence was all received over the defendant's objections. The testimony of Mr. Manahan, who was called by the defendant, is to the effect that he informed the agent that he did not think Mrs. Fitzgerald would sign the contract, that she did not want the elevator; but that he finally telephoned the defendant, informed her of the presence of the agent and the subject of their conversation, and asked for instructions; that her reply was to the effect that under no circumstances would she assent to a contract involving any personal liability on her part, but that, if the plaintiffs were willing to put in the elevator and look to the building itself for their pay, it would be all right; that he informed the agent as to the nature of the defendant's reply, and stated to him that the building ought to be able to pay for the elevator, and that as he was representing the estate in the foreclosure proceedings he would sign the contract as attorney. He further testified that the agent assented to this, and the contract

was accordingly signed as hereinbefore shown. As to what passed between the defendant and Mr. Manahan in their conversation over the telephone on the occasion mentioned, her testimony is substantially the same as his.

It also appears in evidence that the defendant, as administratrix, had previously leased the building to a third party, and one of the conditions of the lease was that she should provide an elevator answering to the description of that in the contract in suit. There is evidence tending to show that when the lease was made she had such contract in her possession in the form of an unaccepted bid, and stated to the lessee, in effect, that she intended to accept it. Shortly after the elevator was constructed, the property was sold under the decree of forclosure and entirely absorbed in the satisfaction of the decree. While the contract purports to bind the defendant in her capacity as administratrix, it is conceded that it is not binding upon the estate, and the suit is against her personally. Consequently, the power, or lack of power, of an administratrix to bind the estate by contract, as well as the power of such officer to delegate her authority, are questions that require no discussion at this time. What seems to be the decisive question in the case is whether the defendant authorized Mr. Manahan to execute the contract.

One item of evidence relied on by the plaintiffs to establish such authority is the testimony of its agent, hereinbefore set out at some length, as to what Mr. Manahan has stated concerning the result of his conversation with the defendant over the telephone just before the contract was signed. Such statement, at most, was a mere declaration of of the alleged agent as to his agency and the extent of his authority. As such, it was incompetent and should have been excluded, because, while the declarations of an agent during the transaction of business for his principal, within the scope of the agency, if made in relation to such business, are frequently admitted as part of the res gestæ, they are never admissible to prove the fact of agency itself; that fact must be established aliunde. 1 Jones, Evidence, sec.

256.  His statements, ordinarily, are not admissible for the purpose of establishing or enlarging his authority.  Nor can his authority be established by showing that he claimed to have the powers which he assumed to exercise.  His acts and statements cannot be used against the principal until the fact of agency has been established by other evidence. Mechem, Agency, sec. 100. · This court has often held·that agency cannot be established by the declarations of the alleged agent.  *Anheuser-Busch Brewing Ass'n v. Murray,* 47 Neb. 627; *Barmby v. Wolfe,* 44 Neb. 77; *Norberg v. Plummer,* 58 Neb. 410; *Nostrum v. Halliday,* 39 Neb. 828; *Burke v. Frye,* 44 Neb. 223.  The fact that his alleged declarations were with respect to a conversation between him and his alleged principal over a telephone would not change the rule.  They were still mere declarations made without the sanction of an oath.  It would be a very dangerous rule that would permit an alleged agent to bind another by his mere statement of what the person for whom he pretended to act said to him over a telephone.

Our attention is called to the evidence tending to show that the plaintiffs' bid for the construction of the elevator, with other bids for the same·work, was gone over in the presence of the defendant, and her statements to the effect that she intended to accept it; that she had leased the property to a third party with the understanding that an elevator answering that description was to be constructed. Such evidence merely tends to show that she contemplated making a contract, but throws no light whatever on the question of Mr. Manahan's authority to make a contract for her.

The plaintiffs also put forward the claim that the contract was ratified by the defendant.  One of the essential elements of ratification is knowledge on the part of the principal of the material facts.  *O'Shea v. Rice,* 49 Neb. 893.  An agent cannot bind his principal beyond the limits of his actual or apparent authority; and the declared willingness of a principal to ratify a conditional contract will not operate as a ratification of an unconditional contract

of which he is ignorant. *Henry & Coatsworth Co. v. Halter,* 58 Neb. 685; *Bullard v. De Groff,* 59 Neb. 783. The defendant in this case no doubt saw the work progressing, but it was upon a building in which it does not appear she had any interest, save as administratrix of the estate of her husband. She had authorized Mr. Manahan to allow the work to proceed only in the event that the plaintiffs would look to the building itself for payment. It does not appear that it was ever brought to her knowledge that he had exceeded his authority, and she had a perfect right to assume, as she saw the work progress, that it was progressing according to the terms of the contract she had authorized Mr. Manahan to make.

The plaintiff bases some argument on the doctrine of ostensible authority. We are unable to find anything in the record upon which that argument can be based. Mr. Manahan was not the defendant's general agent and was clothed with no ostensible authority to bind the defendant personally. The plaintiff's agent knew this, and knew that he was receiving specific instructions over the telephone. It is an elementary rule of the law of agency that one dealing with an agent possessing no ostensible authority whereby those dealing with him may be misled is bound at his peril to ascertain the extent of his authority. Mechem, Agency, sec. 276. It seems to us that there is an utter lack of evidence showing Mr. Manahan's authority to bind defendant, and, as that is a vital point in the case, that the verdict cannot stand.

It is therefore recommended that the judgment of the district court be reversed and the cause remanded for further proceedings.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.