HENRY GEORGE, APPELLEE, V. LEYPOLDT & PENNINGTON ET AL., APPELLANTS.

FILED APRIL 11, 1922.   No. 21940.

Principle and Agent: AGENCY: EVIDENCE. "While evidence of the acts or declarations of a person alleged to be an·agent is not admissible for the purpose of establishing the agency, the testimony of such person, if not otherwise incompetent, is admissible for that purpose." *Nostrum v. Halliday*, 39 Neb. 828.

APPEAL from the district court for Lincoln county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Hoagland & Carr,* for appellants.

*Halligan, Beatty & Halligan,* contra.

Heard before LETTON, DEAN and DAY, JJ., CLEMENTS (E. J.) and WELCH, District Judges.

WELCH, District Judge.

This is an action brought by Henry George, plaintiff and appellee, to recover from Leypoldt & Pennington a balance which plaintiff claimed to be due him from defendants for seven stacks of hay which plaintiff alleged he had sold and delivered to the defendants through their agent, one Charles Carlton, at the sum of $18 a ton and for which the defendants had paid but $466. The defendants denied that said Carlton acted as their agent in·the purchase of any hay from plaintiff. They further alleged that they purchased of said Carlton 24 stacks of hay, which was to be baled and placed on the cars for them at Brady, Ne-

braska, and that by virtue of said agreement defendants agreed to advance, and did advance, money to said Carlton to make advance payments to the plaintiff for hay, which said Carlton purchased from plaintiff and sold to defendants. The only question in the case to be determined on the trial was whether or not said Carlton was agent for defendants, and, as such, bought the hay from plaintiff. Trial was had to a jury and verdict returned for plaintiff.

The appellants assigned herein as error that the court erred in refusing to give instruction No. 1 asked by defendants. Such refusal was not assigned in the motion for a new trial as ground therefor. This court, therefore, will not review the action of the trial court in refusing to give the instruction. *Home Fire Ins. Co. v. Phelps,* 51 Neb. 623.

Other errors assigned herein relate to the admission and rejection of evidence on the trial, and to the sufficiency of the evidence to sustain the verdict. The said Carlton, called to testify in behalf of plaintiff, testified that about March 10, 1919, he had a telephone conversation with the defendant Leypoldt, he, Carlton, being at Brady, and Leypoldt at North Platte. He testified as follows: "I told him there was some hay down there I could buy for him and asked him what he could pay for it. He asked me the quality of the hay and I told him Mr. George said it was good hay. He told me to go and look at it and if it was good quality and good color to buy it for them. * * * I went down and looked at the hay and came back and called him up. * * * I told him it was No. 1 hay, good quality and good color, around sixty ton, * * * seven stacks, and that Henry insisted on measuring the hay. * * * He said they would only buy hay by weight. * * * I says, 'Henry wants a payment down.' He says, 'Make a payment down. We want the hay.' I says, 'How much shall I pay down?' He says, 'Make him a good payment. Draw on us for the money.'" Carlton also testified that he told Leypoldt the baling and hauling was all he cared about, and that he said they could pay $24. "That would allow me $6 for

baling and hauling." After the conversation "I took him (George) over to the bank and drew a draft on Leypoldt & Pennington for $400. * * * I told him they would make him a payment down and to draw enough of the money at $18. * * * A draft was drawn for $400, the money was turned over to Mr. George." This draft was introduced in evidence. It was in favor of Henry George, and stated thereon, "Payment on hay, 7 stacks," and was duly paid by Leypoldt & Pennington. Carlton also testified that after he had looked at the hay he saw George and told him that Mr. Leypoldt would pay $18 for the hay in the stack. Carlton testifies that the hay measured 59 tons, and something; that he baled and hauled it to Brady; that all the hay was hauled there, and that he shipped it out; that Mr. Pennington billed the last two cars himself; that he would call up and they would telephone him the bill, or some of them would come down and bring the bill. He also testified that Leypoldt said to him, "to be sure to see it was measured so it would hold out."

Appellants assign as error that the court erred in admitting this testimony of Carlton tending to establish an agency between appellants and Carlton, and that the court erred in admitting the testimony of Carlton of his conversation with the plaintiff. The appellants contend that this testimony was inadmissible, for that agency cannot be proved by mere acts or declarations of an alleged agent, not brought home to the principal. The testimony of Carlton of his conversation over the telephone with Leypoldt was testimony of acts and declarations of Carlton, the alleged agent, with the alleged principal, and of the declarations of that principal. They tend directly to constitute Carlton agent of the appellants, Leypoldt & Pennington, to buy this hay of appellee for them. They are not acts or declarations not brought home to the principal. The authorities cited by appellants in support of their contention are all cases in which it was sought to prove agency by proving unsworn statements and declarations of the alleged agent. They were not cases in which the state-

ments and declarations of the agent consisted of testimony of that agent in the case then on trial, testifying to his declarations and statements to the alleged principal, and the principal's replies thereto. Appellants lay considerable stress upon the decision in the case of *Fitzgerald v. Kimball Bros. Co.*, 76 Neb. 236. In that case it was sought to prove agency by proof of what the alleged agent had said when not under oath or testifying in the case, as to the effect and nature of a conversation carried on between himself and his alleged principal by telephone. It was not sought to prove this by the testimony of the alleged agent who had the telephone conversation, but to prove it by another person testifying to what the alleged agent stated was the effect of his telephone conversation. All the other cases cited by appellants on this point are based upon acts and declarations of the alleged agent made by him when not testifying in the case on trial.

"While evidence of the acts or declarations of a person alleged to be an agent is not admissible for the purpose of establishing the agency, the testimony of such person, if not otherwise incompetent, is admissible for that purpose." *Nostrum v. Halliday*, 39 Neb. 828.

None of the authorities cited by appellants hold that the alleged agency cannot be established by the testimony of the alleged agent testifying in the case on trial as to his declarations to the alleged principal, and such principal's replies thereto.

It was proper, after this testimony of Carlton as to these conversations with said Leypoldt, for Carlton to testify as to what conversations he had with the appellee with reference to buying the hay. If Carlton was the agent of appellants his conversation with appellee was a part of the *res gestæ*. This testimony of Carlton as to his conversation with appellee was necessary in order that the jury might determine therefrom whether or not the said Carlton did buy the hay for appellants as their agent, in case the jury found he was so authorized to buy it. The declarations of an agent during the transaction of business for

his principal, within the scope of his agency, if made in relation to such business, are admitted as a part of the *res gestæ,* but not to prove the fact of agency itself. Jones, Evidence (2d ed.) sec. 255.

Appellants, however, argue that this evidence would be insufficient to authorize Carlton to buy hay in the stack for appellants. From the testimony of Carlton it appears that he told Leypoldt that George insisted on measuring the hay, to which Leypoldt said he would only buy it by weight, and Carlton then told him, "Henry wants a payment down," to which Leypoldt replied, "Make a payment down. We want the hay." He also testified Leypoldt told him to be sure and see it was measured so it would hold out. There is testimony that later, after the controversy arose about payment for the hay, Leypoldt stated in the presence of plaintiff, Carlton, and one R. H. Beatty, in the office of plaintiff's lawyers: "I will admit that Mr. Carlton bought this hay for us; that he was our agent. * * * He also bought some hay from Fred George. * * * I know I have Mr. George's hay and I will have to pay him for it some time, but before I do you will have to bring suit and you will have to get Mr. Carlton's testimony in writing before I will settle." This conversation tends to show that Leypoldt, after all the facts relating to the buying of the hay were known to him, considered that Carlton was agent of appellants in buying the hay. If the jury found that such statements were made by Leypoldt, they should consider the same with all the other evidence in the case in determining whether or not Carlton was agent of appellants in buying the hay, and whether or not he had authority to buy the hay in the stack for appellants. The evidence introduced in behalf of the appellants tended to show that Carlton was engaged in buying hay and selling it to the appellants in order that he might get the labor in baling and hauling the same. The testimony of the said Leypoldt as to his conversation over the telephone with Carlton tends to contradict the testimony of said Carlton in reference thereto. The testimony of said Leypoldt as to his said conversation

in the office of plaintiff's attorneys to some extent contradicts that introduced by plaintiff. The evidence introduced by plaintiff, if true, was sufficient to establish the agency claimed. It was for the jury to determine the truth of this testimony. By its verdict the jury found that Carlton was agent for the defendants.

Appellants contend that a letter written by appellee to appellants contradicts the testimony that plaintiff sold the hay to defendants. In that letter appellee says: "I sold seven stacks of hay to C. C. Carlton for you and same was baled and shipped in your name. I have not received the money for this hay and want you to remit me for it or pay C. C. Carlton so he can pay me." The statements in that letter are not inconsistent with a sale to defendants by the plaintiff. The letter says the hay was sold to Carlton for defendants. This can easily be construed to be a claim that it was sold to defendants through Carlton as their agent. The statement that he wanted them to remit him or pay Carlton simply shows that plaintiff was willing to trust Carlton to turn the money over to him.

Appellants assign as error the fact that they were not permitted to show by Carlton the amount of hay delivered at Brady. Carlton had testified that the hay bought of plaintiff measured fifty-nine tons; that all of the same was delivered at Brady. It was immaterial what amount of hay bought of other parties was delivered at Brady.

Appellants also assign as error the refusal of the court to permit appellants to introduce their regular records which tended to show that they had no relations or account with plaintiff, Henry George. Two of these records consisted of drafts drawn by Carlton on Leypoldt & Pennington payable to Brady State Bank. There is no evidence that either of these drafts had any connection with or relation to the hay purchased of appellee. The other record rejected appears to be an account of hay which they bought, including that of Henry George, in which account is charged payments made, the price, etc., with the name "C. C. Carlton" at the top. There is nothing in this ex-

hibit which would contradict the theory that Carlton was the agent of Leypoldt & Pennington in purchasing this hay of Henry George. It is a frequent practice of concerns, having agents at different points buying or selling for them, to keep their records of transactions at those points in an account in which they charge the agent with remittances made to him and credit him with receipts from him, and leave the matter of the transaction of their business with other persons at that agency entirely with their agent, making no accounts thereof in their own records. Furthermore, Leypoldt had testified that they had no account with Henry George. The fact that appellants had made their records show that they purchased the hay in controversy from Carlton would not make such records competent evidence against George, in an action brought by him to recover for the hay. This record was not a book of account between appellee and appellants in which charges and credits were made to said parties. The account of one person shown by books of account is not admissible in an action with another person concerning the account of such other person, to show that there was no transaction with such other person.

Appellants also claim it was error by the court in refusing to permit plaintiff to testify that he never called Leypoldt & Pennington up to verify the statements of Carlton. Objection was made to a question calling for such testimony that it was immaterial, and the objection was sustained. It was immaterial. If plaintiff did not make such inquiry, it would show that he trusted Carlton. If Carlton had not authority to buy for appellants, then he trusted him at his peril. Whether plaintiff called up defendants to make such inquiry would in no manner tend to establish the fact that Carlton was not defendants' agent.

As hereinbefore stated, there was evidence tending to establish the alleged agency. Evidence bearing thereon being conflicting, the question was one for the jury. It

was submitted to the jury.   We find no error in the reception or rejection of evidence.   The judgment is

AFFIRMED.