(134 App. Div. 516.)

STIEBEL et al. v. HAIGNEY et al.

(Supreme Court, Appellate Division, First Department.   November 19, 1909.)

1. PRINCIPAL AND AGENT (§ 163*)—UNAUTHORIZED ACTS OF AGENT—RATIFI-
   CATION.
       A ratification of the unauthorized act of an agent is a confirmation of
   the act, and, to exist, it must be found that the principal, either express-
   ly or impliedly, ratified the act.
       [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§
   618–621;  Dec. Dig. § 163.*]

2. ESTOPPEL (§ 90*)—ACQUIESCENCE—ACCOUNTS.
       A customer of a stockbroker had dealings with him through an em-
   ployé, who received all the instructions as to the business.  The customer

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

received an account at the end of each month from February to October, and made no protest, because he did not want to injure the employé, who had been guilty of fraudulent conduct, to the injury of the customer. With knowledge of all the facts, he admitted his indebtedness, and promised to pay it. *Held*, that the rights and liabilities of the broker and customer became fixed when the customer, with knowledge of the facts, promised to pay the account as rendered, and the broker could recover thereon.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 248; Dec. Dig. § 90.*]

Appeal from Special Term, New York County.

Action by Samuel J. Stiebel and others, copartners doing business under the name of Stiebel, Hernsheim & Co., against John H. Haigney and others. From a judgment for plaintiff, entered on a decision in an action in equity to foreclose a lien on shares of stock, defendant John J. Haigney appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Seelman & Farley (Ernest P. Seelman, of counsel), for appellant.

Hand, Bonney & Jones (Francis L. Kohlman, of counsel), for respondents.

CLARKE, J. The complaint alleged that the plaintiffs were stockbrokers, and that on or about the 13th of September, 1906, the defendant Haigney opened an account with them; that thereafter at his request they purchased and sold on his account various securities, and defendant deposited with them certain shares of stock as margin. On the 31st of December, 1906, an account was stated, showing $2,348.20 due and owing to the plaintiffs, which sum defendant promised and agreed to pay; that he had refused upon demand; that the plaintiffs have the said stock deposited as margin or security in their possession; that the three other defendants may have or claim to have some interest or lien in said shares, which interest or lien, if any, is subordinate to the interest of the plaintiffs therein; and plaintiffs demanded judgment that said sum is due by the defendant Haigney to the plaintiffs, and that each of the defendants be foreclosed of all right, title, interest, and lien at law or in equity upon said shares of stock, that they be sold, and the proceeds applied to the payment of said debt and the costs of this action, and the surplus, if any, be paid to the defendants as may be entitled to the same, and, if there be a deficiency, plaintiffs may have judgment therefor against the defendant Haigney.

The answer denied the account stated and the promise to pay, and for a separate defense and counterclaim alleged that certain of the agents and servants of the plaintiffs, without any authority from the defendant, and without his knowledge or consent, conducted the buying and selling of stocks for their own account, and charged the said purchases and sales to the account of this defendant, and that upon the entire account, after deducting therefrom said spurious and unauthorized sales, plaintiffs were, on the 31st of October, 1906, justly indebted to this defendant in the sum of $12,000, for which he demanded judg-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

ment, and that the plaintiffs be compelled to deliver to the defendant the shares of stock held by them as alleged in their complaint.

It appears that one Ryan was a telegrapher in the plaintiffs' office; that the defendant had known Ryan for some six years before the trial of the action, when he was employed by another firm of bankers and brokers; that the defendant first opened an account with the plaintiffs December 30, 1905, and had opened that account through Ryan, who solicited the account, saying to the defendant that it would help him along and give him an increase of salary if defendant would turn some of his business into plaintiffs' firm; that all of Haigney's instructions in regard to the account were given to the firm through Ryan, Haigney having no personal dealings whatever with the plaintiffs; that the customary notices of the transactions, as they occurred, were sent by the firm to the address or addresses indicated by Ryan. The defendant testified that the last transaction that he authorized occurred on November 6, 1906. He claimed that after that date he had not received any of the statements, letters, or communications which the plaintiffs proved to have been sent, including the account of December 31st, at the time of their transmissal, but that the first knowledge that he had of any transactions charged in his account after the 6th of November, 1906, was in the month of February, 1907, when Ryan, who was still in the office of the plaintiffs, handed said December statement to him; that thereafter he received many visits from Ryan; that he knew in February that the plaintiffs had a claim against him on his account; that he never made any protest to the firm between February and April; that he received accounts at the end of each month down to October of 1907, which carried forward the balance as stated on the December, 1906, account, with the addition of interest. In answer to the court the defendant testified:

"This stock, which is the collateral of these matters in dispute here, had been deposited by me with the plaintiffs. I deny now that I owed the plaintiffs anything in these transactions. That position I did not take until October, 1907. I can state the reason. I never demanded back the certificates of the stock which I turned over to the plaintiffs."

His reason may be, as he testified at another time in the case: "I did not want to do Mr. Ryan any injury in regard to it." The defendant practically concedes that the accounts which he admits having received in February, and the monthly reduplications thereof, so far as totals are concerned, with the addition of interest, which he received down to October, constituted an account stated, because, having received them, showing a balance against him, he did not within a reasonable time after their receipt make any protest, deny their accuracy, or demand an amount which he now claims to be due or the return of his collateral securities; and he admits the force and effect of an account stated, but claims that such an account is always open to attack upon the ground of fraud or error, and that mere silence simply shifts the burden of proof; that the account is prima facie evidence of the debt, and if fraud or error be claimed it simply puts the burden of showing such fraud or error upon the defendant; and that he has sustained that burden when he testified that he gave no instructions what-

ever in regard to the acts after November 6, 1906, and when he showed that Peter Ryan, who did give all the instructions in regard to the account, was the employé of the plaintiffs, and that there is no reason why he should suffer for the fraud, misconduct, or crime of the plaintiff's employé. He admits that there may be an estoppel in pais, which would prevent an attack upon an account stated, even for fraud or error, but claims that such an estoppel cannot arise from mere silence, but only from such conduct as induced the plaintiffs to do or refrain from doing some act in reliance thereon to their detriment, and claims that none of the acts of Ryan were done after he acquired knowledge of Ryan's misconduct, and that therefore the plaintiffs took no harm by reason of his delay in repudiating the account and making his demand.

If it be conceded that no estoppel in pais was created by mere silence after discovery, the acts having all been performed and the fraud perpetrated and the loss occasioned before discovery, there remains the question of ratification. It is said in 31 Cyc. 1247:

"In the literature of the law there has often been little inclination displayed to distinguish between ratification and estoppel in pais. * * * The substance of ratification is confirmation of the unauthorized act or contract after it has been done or made; whereas, the substance of estoppel is the principal's inducement to another to act to his prejudice. Acts and conduct amounting to an estoppel in pais may in some instances amount to a ratification; but, on the other hand, ratification may be complete without any of the elements of an estoppel, and if the act or contract in question has in fact been ratified, and the ratification is sufficient, there is no need of invoking the doctrine of estoppel."

Forsyth v. Day, 46 Me. 176, is cited, which holds that the distinction between a contract intentionally assented to, or ratified in fact, and an estoppel to deny the validity of a contract, is very wide. In the former case the party is bound because he intended to be; in the latter he is bound, notwithstanding there was no such intention, because the other party would be prejudiced and defrauded by his conduct, unless the law treat him as legally bound. In the one case the party is bound because the contract contains the necessary ingredients to bind him, including a consideration. In the other he is not bound for these reasons, but because he has permitted the other party to act to his prejudice under such circumstances that he must have known, or be presumed to have known, that such party was acting on the faith of his conduct and acts being what they purported to be, without apprising him to the contrary.

In Merritt v. Bissell, 155 N. Y. 396, 50 N. E. 280, Martin, J., said:

"A ratification of the unauthorized act of an agent, or of a stranger who claims to act as such, if it exists, must be found in the intention of the principal, either express or implied. If that intention cannot be shown, no ratification can be held to have been established. While it is the duty of a principal to disavow the unauthorized act of his agent within a reasonable time after it comes to his knowledge, or otherwise, in some cases, he makes the act his own, still, where one who has assumed to act as an agent for another has no authority to do so, but is a mere volunteer, a failure to disavow his acts will not amount to a ratification, unless under such circumstances as indicate an intention to do so."

As every direction in relation to this account had been given by Ryan to the plaintiffs, and they had promptly transmitted notice of their action upon these orders, and had sent statements to Haigney, at the address given as his by Ryan, they had the right to regard the orders as sent by Haigney, through Ryan as his agent for that purpose, up to the time, at least, that they received information to the contrary. The learned court has found:

"The said account of December 31, 1906, and the subsequent statements of the account, which were retabulations of the December statement, with interest charges added, were accepted, ratified, acquiesced in, and assented to by the defendant John J. Haigney as rendered by the plaintiffs."

Mr. Homan, one of the plaintiffs, testified to a conversation with the defendant in the latter part of November, 1907:

"I said to him: 'According to our books, about the market price of the day, you owe us, Mr. Haigney, between $6,000 and $7,000, according to the market prices that prevailed at that time.' I said: 'Mr. Haigney, do you owe this money, or do you not?' Mr. Haigney answered me: 'I do. I don't intend to go back on it, and I owe it, and I called here, and I am going to fix it up; but I do want to say this to you, Mr. Homan. Ryan got me into trading or selling Reading short, and if it had not been for that I would have made no such loss; but that is neither here nor there. I am not going to plead the baby act, and I am going to take care of the account and fix it up, and I am here for that purpose.' 'Well, that is no more than I expected from you, Mr. Haigney, and I am glad I was not mistaken in you.' I said: 'What we want to do now is, if you feel that way about it, to get this stock signed properly and put in negotiable shape.'"

Weiss also testified to admissions by Haigney that the amount was due, and there was other testimony showing a meeting between the parties, and an attempt to get releases from all the parties claiming an interest in the stock, and a proper indorsement thereof, so that it might be negotiable. The defendant admits conversations with Weiss and Homan, but denies an admission upon his part that the amount claimed was due. There being evidence to support the finding of the Special Term, we are not prepared to say that said finding was against the weight of evidence. If such conversation was had, it satisfied all the legal requirements of a ratification. It was held when the defendant was possessed of full knowledge of all the facts, and exhibited the full intention to adopt the transactions as his own, a refusal to plead the baby act, and a direct promise to pay.

The defendant had full knowledge, upon his own testimony, of what he claims to be the rascality of Ryan, and made no mention of it for months to the plaintiffs, through his unwillingness, as he expressed it, to harm Ryan. There must come a time in the relation of parties when their respective rights and liabilities become fixed. We think that time arrived, as indicated, when the defendant, having had the claims of the plaintiffs in his possession for months, with full knowledge of all the facts, promised to pay the account as rendered.

The judgment appealed from should be affirmed, with costs. All concur.