## DEVOY & KUHN COAL & COKE CO., Appellant, v. H. W. HUTTIG et al., Appellees.

**BILLS AND NOTES:** Filling Blanks—Violating Authority—Effect
1  —Jury Question. He who signs in blank that which, when completed, will be a negotiable promissory note, and intrusts it to another with specified authority as to the filling of blanks, is not liable thereon in an action *by a payee* whose name was inserted as such payee in violation of the said given authority, even though such payee had no knowledge that the note had been signed in blank and intrusted to another to fill out. (Sec. 3060-a14, Code Supp., 1913.) Evidence reviewed, however, in the case of an endorser of a note while only signed in blank, and held to present a jury question whether there had been any violation of authority in filling out the note.

**BILLS AND NOTES:** Filling Blank—Violating Authority—Evidence.
2  Evidence reviewed, in a case where a note signed in blank was intrusted to another with authority to so fill out as ''to assist in financing the maker,'' and *held* to present a jury question whether the note had not been so filled out as to actually discharge a debt of the maker, and therefore whether there was no excess of authority in inserting the name of payee.

**BILLS AND NOTES:** Ultra Vires—Position of Endorser—Statutory
3  Warranty. An endorser of a negotiable promissory note says, in effect: I warrant that all prior parties to this note had capacity to contract. So *held* where an endorser attempted to ward off liability by the claim that the execution of the note *by the maker* (a corporation) was *ultra vires*. (Sec. 3060-a65, Code Supp., 1913.)

**BILLS AND NOTES:** Alteration of Instrument—Addition of En-
4  dorser—Non-Consent of Prior Endorser. The addition of an endorser to a note, without the consent of a prior endorser, but before the note was delivered to and accepted by the payee (who had no knowledge of the order of endorsing) is not such material change as to release the non-consenting endorser. (Sec. 3060-a125, Code Supp., 1913.)

**BILLS AND NOTES:** Discharge of Endorser—Holder's Right To
5  Elect To Hold Part of Endorsers. It is competent for the holder of a negotiable promissory note to elect to hold only a *part* of the endorsers.

**BILLS AND NOTES:** Payment and Discharge—Parties Secondarily

6   **Liable.** The endorser of a promissory note is not primarily liable
thereon because of the fact that he was at one time the maker
of a note which was paid by the substitution of the note in
question, on which he was only endorser. (Sec. 3060-a192, Code
Supp., 1913.)

*Appeal from Muscatine District Court.*—M. F. DONEGAN,
Judge.

SATURDAY, FEBRUARY 19, 1916.

ACTION on a promissory note resulted in a directed ver-
dict and judgment thereon for defendants. The plaintiff
appeals.—*Reversed.*

*John A. Blevins* and *D. V. & R. S. Jackson,* for appellant.

*Jayne & Hoffman,* for appellees.

LADD, J.—The action is against Huttig and Blackwell as
endorsers on the following note:

"Summit Lumber Company
"Manufacturers of
"Soft Short Leaf Yellow Pine Timber
"$1,169.40                St. Louis, Mo., February 2nd, 1914.
"One month after date we promise to pay to the order
of Devoy & Kuhn Coal & Coke Co., eleven hundred sixty-nine
and 40/100 dollars at our office, 1014 Wright Bldg., St. Louis,
Mo. Value received. Interest 6 per cent. per annum from
date.
No. 2640                Summit Lumber Company,
Due 3-2-14              By Aylmer Flenniken, Treas.
    "Endorsed as follows:
        "1014 Wright Bldg.,
    "Arkansas Southeastern R. R.
        "J. S. Blackwell, President.
        "J. S. Blackwell, Muscatine, Iowa.
        "H. W. Huttig, A. K. Silverthorne, North Tonawanda,
        N. Y."

The note, in connection with the certificate of protest by the notary public, imported a liability on the part of the defendants, and the only question raised is whether the defenses interposed were such as to justify the trial court in withdrawing the issues from the jury. The note was one of several signed by the Summit Lumber Company in blank and endorsed when in that condition, first by Blackwell, and then by Huttig, who sent them to Silverthorne to add his name. Huttig orally instructed Blackwell in relation to the notes, and the latter testified that the note sued on was left with him to assist in financing the Summit Lumber Company.

"Q. Was it used for that purpose? A. It seems not. . . . Q. Was it used to assist in financing the Summit Lumber Company? A. It was not."

He then testified that it was given plaintiff to take up a note of like amount of the Arkansas Southeastern Railway Co. On cross-examination, he swore that the railway company was hauling logs for the lumber company; that there was an open account between them; and that he "thought that it would be all right to use the Summit Lumber Co. note to pay the debt of the Arkansas Southeastern Railway Co. and charge it to this account". He testified further that he supposed it was so charged; that it should have been; and that, as president of the railway company, he knew that he had taken this on for it "because there was an open account between the two companies".

Reichert arranged with Kuhn, plaintiff company's president, to take the note sued on in satisfaction of a note of like amount executed by the railway company, and by direction of Blackwell filled in plaintiff's name and the amount of the note, and, after Blackwell as president of the railway company had placed its name on the back of the note as an endorser, delivered it to plaintiff. Huttig testified that he was president of the lumber company and auditor of the railway company; that there was a contract between the two

companies; that the lumber company became indebted to the railway company, and (quoting):

"I never authorized Mr. Reichert or anybody else to fill in the name of Devoy & Kuhn Coal & Coke Co. I gave them authority to pay the debts of the Summit Lumber Co. Not any particular debt, any debt."

The appellee insists that on this evidence the verdict was rightly directed, for that: (1) The filling in of the blanks was unauthorized; (2) the execution of the note was *ultra vires;* (3) the endorsement of the railway company constituted a material alteration; and (4) notice of dishonor was not served on the railway company, and, as it was primarily liable, the omission released Huttig.

I. As Blackwell was in possession of the note signed in blank, in the absence of any evidence to the contrary he was authorized to fill the blanks; and, of course, he might do so through another. The same rule as to authority, however, applied to Reichert. Section 3060-a14, Code Supp., 1913, declares that:

1. BILLS AND NOTES: filling blanks: violating authority: effect: jury question.

"Where the instrument is wanting in any material particular, the person in possession thereof has a prima-facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima-facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time."

Nor does Huttig deny that Blackwell was expected by him to make use of the blank notes by filling the blanks. His contention is that this was not done strictly in accordance with the authority conferred, as we understand him. He admits having given authority to use the notes (there were 13 of them signed in blank and so endorsed) to meet the debts of the lumber company. The evidence failed to show any existing debt of it to the railway company. But, according to Blackwell, the note was left with him "to assist in financing the company", and this is not denied by Huttig. By "financing" is meant providing the means, generally, of carrying on its enterprises and meeting its obligations. A contract existed between the two companies, under which the lumber company employed the railway to carry its lumber and became indebted to it. The condition of the account between them was not shown, but it was such that Blackwell thought it would be all right to use this note to pay the debt of the railway company to the plaintiff and allow it a credit for the amount thereof on the railway company's books, and thus offset what the lumber company then owed it or would owe. This might have been found by the jury to have been in the way of financing the lumber company and filling the blanks authorized for that purpose. The evidence, as seen, is not specific. Much is left to inference, and surely it cannot be said, as a matter of law, that arranging for a credit to the lumber company by the railway company to which it was certain to become indebted might not have been found by the jury to be aiding in financing the lumber company. This issue was for the jury.

II. Again, Kuhn testified that the note sued on was received by plaintiff to take up a note of like amount signed by the Summit Lumber Co., and that the note taken up was signed and endorsed precisely like that sued on. He testified, further:

2. BILLS AND NOTES: filling blank: violating authority: evidence.

"A long time previous to this we had a note signed by the Arkansas Southeastern

R. R. Co. That note became due, and in place of it there was given us a note signed by the Summit Lumber Co., and endorsed by the Arkansas Southeastern R. R. Co. by J. S. Blackwell, President, by J. S. Blackwell, the individual, and by A. K. Silverthorne. This note was paid by the Summit Lumber Co.

CROSS-EXAMINATION.

"These notes were originally given to me by the Arkansas Southeastern for coal furnished that company. Two of these notes were renewed by notes of the Summit Lumber Co. The first note was given by the company for coal furnished the Arkansas Southeastern Railway Co. That note was given by the Summit Lumber Co. and endorsed just like this note (Exhibit A) is endorsed."

From this it might have been inferred either that the note of the Summit Lumber Co., taken up by that sued on, was given for coal furnished the railway company, or for a note of the railway company; and in either event the defense interposed just considered would not be available. There was no evidence tending to show that the note so taken up was not complete when delivered. It is presumed to have been given for a consideration. The defense of failure to comply with authority in filling the blanks must fail if the facts were as testified by Kuhn, then; for, under this evidence, the note sued on was used to pay on indebtedness of the lumber company, and Huttig admitted authorizing its use for such purpose. Whether delivered to plaintiff to take up a like note or one of the railway company was a material issue for the jury, involving the defense of noncompliance with authority in filling the blanks of the note, and should have been submitted to the jury.

III. Appellant contends that Blackwell acted as Huttig's agent in filling in the blanks of the note. Doubtless, he was acting for the Summit Lumber Co. in assisting in financing, but had no authority, save under the section quoted and as

appears from the evidence, for filling out the note. That, prior to the enactment of the statute quoted, the law. was otherwise appears from the numerous authorities cited by counsel. We are not inclined to depart from the ruling of *Vander Ploeg v. Van Zuuk,* 135 Iowa 350, notwithstanding *Lloyd's Bank v. Cooke,* (1907) 1 K. B. 794, and *Smith v. Prosser,* (1907) 2 K. B. 735. Indeed, the conclusion there reached seems unavoidable; for the language does not indicate that by the "person in possession" is meant he to whom the note has been delivered as such. *Builders' Lime & Cement Co. v. Weimer,* 170 Iowa 444.

IV. It is unnecessary to inquire into whether the Summit Lumber Co. might issue its notes to pay the indebtedness of another corporation. Conceding its in-

**3. BILLS AND NOTES: *ultra vires:* position of endorser: statutory warranty.**

capacity in this respect, the endorsers would not be relieved from liability, for the endorser admits that prior parties had the capacity to contract. Section 3060-a65, Code Supp., 1913; *Glidden v. Chamberlin,* 167 Mass. 486 (46 N. E. 103); *Maledon v. Leflore,* (Ark.) 35 S. W. 1102; 1 Daniel on Negotiable Instruments, §§ 669a, 675, 676; 3 Cook on Corporations (6th Ed.), p. 2573.

V. The railway company's name was endorsed on the note after Huttig had endorsed it, and without his consent, but before delivery. As there was no contract at the time and until delivery to plaintiff, who had no

**4. BILLS AND NOTES: alteration of instrument: addition of endorser: non-consent of prior endorser.**

knowledge of the order of endorsing, the addition of another endorser was not such material change as to invalidate the note. *Graham v. Rush,* 73 Iowa 451; *Ward v. Hackett,* 30 Minn. 150; 2 Cyc. 221. See note to *Burgess v. Blake* (Ala.) 86 Am. St. 78, 112. Alterations mentioned in Sec. 3060-a125, Code Supp., 1913, are those made after delivery. *Johnston v. Hoover,* 139 Iowa 143.

VI. The certificate of the notary making demand and giving notice of dishonor is not set out, so that we shall have

to assume that there was no notice thereof to the Arkansas Southeastern Railway Co. as an endorser, and appellee contends that as its name precedes his on the back of the note, and, as it is primarily liable in fact, the failure to notify it released Huttig as surety. It was competent for plaintiff to elect to hold only a part of the endorsers, and in order to do so, he must have caused these to be served with notice of nonpayment, and he could maintain an action against them, though others may be released because of not having been notified. *Hamilton v. Veach,* 19 Iowa 419.

5. BILLS AND NOTES: discharge of endorser: holder's right to elect to hold part of endorsers.

Nor is there ground in the record for saying that the railway company is primarily liable. True, it was once the debtor; but its note was surrendered in consideration of that sued on, or one like it, and the note of the lumber company taken in satisfaction thereof with the railway company as endorser. This left the railway company only secondarily liable, and on the same footing as Huttig. Section 3060-a120, Code Supp., 1913, is not applicable.

6. BILLS AND NOTES: payment and discharge: parties secondarily liable.

The issues should have gone to the jury, and, for the error in directing a verdict, the judgment is—*Reversed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.