MARION SAVINGS BANK, Appellee, v. P. J. LEAHY et al.,
Appellants.

**BILLS AND NOTES:** Execution—Authority to Fill Blanks. The legal possessor of an instrument which is in the form of a duly signed promissory note, but blank as to date, amount, maturity, and rate of interest, has authority to so fill in the blanks as to complete the instrument, there being no agreement as to how such blanks should be filled.

**BILLS AND NOTES:** Alterations—Material Alterations. Changing the place of payment of a promissory note constitutes a material alteration and avoids the note as to a nonconsenting party.

**BILLS AND NOTES:** Execution—Exceeding Authority in Filling Blanks—Effect. The act of the maker of a promissory note (signed by sureties and blank as to amount) in filling in a larger amount of principal than authorized, avoids the note in the hands of the original payee.

**BILLS AND NOTES:** Execution—Alteration and Violated Authority—Ratification. The defense of material alteration and violation of

authority in executing a promissory note is not available to a surety who, with full knowledge of the facts, files and receives dividends on a claim in bankruptcy proceedings against the maker of the note, based on an unequivocal assertion of liability on the note as surety.

**Headnote 1:** 8 C. J. pp. 183, 184, 185.  **Headnote 2:** 8 C. J. p. 729 (Anno.)  **Headnote 3:** 32 Cyc. p. 67.  **Headnote 4:** 32 Cyc. p. 163.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

### JUNE 25, 1925.

SUIT against the sureties on a promissory note.  From a directed verdict in favor of the plaintiff, the defendants appeal.—*Affirmed.*

*Stewart, Penningroth & Holmes* and *W. E. Wallace,* for appellant P. J. Leahy.

*W. E. Wallace,* for appellants P. J. and M. H. Donohoe.

*C. J. Haas* and *C. J. Lynch,* for appellee.

ALBERT, J.—The defendants, in answer to plaintiff's petition, pleaded that the instrument sued on had been altered, after signature by the defendants, changing the time and place of payment and rate of interest; also that they signed the note in blank, with the agreement and understanding with the maker thereof that the note was to be made for $1,000; and that, in violation of said agreement, the maker filled in $2,500 as the consideration of the note.  Plaintiff replies by saying that it denies the alleged agreement as to the amount of the note, and pleads further that, with knowledge of the alteration of the note, defendants ratified the same and acquiesced therein; that the maker of the note, Bollinger by name, went through bankruptcy, and that these defendants, as sureties on the note, filed a claim in the Bollinger bankruptcy proceedings, based on their liability on this note, and that the same was allowed as a claim in said estate; that they received dividends on said note in said bankruptcy proceedings; and that they therefore ratified the acts of

Bollinger with relation to said note, and were, accordingly, liable thereon. On these issues and the evidence, the court directed a verdict for the plaintiff.

The plaintiff admits that, when the note was first presented to it, there was no payee named in the note, and that one of the plaintiff's officers wrote or stamped in the name of the plaintiff.

**1. BILLS AND NOTES: execution: authority to fill blanks.** Plaintiff also admits that, when the note was so presented, the place of payment in the printed form was designated as Parnell Savings Bank, Parnell, Iowa, and that, when plaintiff insisted that the same be changed, Bollinger scratched the words "Parnell Savings Bank, Parnell," and wrote in "First Nat'l Bk." The note was dated at that time "8/16/20," and, to the end that it might be dated on the date the bank purchased it, the cashier stamped in, after Bollinger had erased "8/16/20," "Aug. 20, '20." The plaintiff's officers further testify that, after the purchase of this note, in the same place where Bollinger had inserted "First Nat'l Bk.," one of their officers wrote the word "Marion," so as to make it read "First Nat'l Bk., Marion, Iowa."

As to the filling in of the blank for the rate of interest, Bollinger testifies that he placed therein the figure "7." He also testifies that the figures "2,500," indicating the consideration of the note, were written in by him before the defendants signed the same, although, as said, they testified that the same was blank, and that the agreement was that the amount thereof was to be $1,000, instead of $2,500.

Viewing the transaction from the defendants' standpoint, that they signed this instrument with none of the blanks filled in, we have to consider Section 3060-a14, Supplement to the Code, 1913 (now Section 9474, Code of 1924), which reads:

"Where the instrument is wanting in any material particular, the person in possession thereof has a prima-facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima-facie authority to fill it up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be

filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time.''

If this note was delivered to Bollinger by the defendants in the blank form that they claim, it was his privilege, under this section of the statute, to fill in said blanks in any way he saw fit, in the absence of any agreement between them as to what was to be placed in the blanks. It follows, therefore, that Bollinger had the right to fill in the date; and the fact that he changed it from ''8/16/20'' to ''Aug. 20,'' would be binding on the defendants, because, under their testimony, there was no agreement as to the date of the note. Further, there was no agreement as to the due date of the note; and therefore Bollinger had the right to fill in the time as he did. Neither was there any agreement as to who the payee was to be, and he equally had the right to fill in the name he did. The note being blank as to the rate of interest, and no agreement being had about that, he would have a right to fill in such a rate of interest as he saw fit, not exceeding the statutory rate.

On the question of the place of payment, as above stated, the printed form provided that it was to be payable at the Parnell Savings Bank, Parnell, Iowa. The note was in this condition when it was signed by the defendants. It was changed by Bollinger before he delivered it, and made payable at the First National Bank, and to this was added the word ''Marion'' by the plaintiff, after it was delivered to it.

2. BILLS AND NOTES: material alterations.

Section 3060-a124, Supplement to the Code, 1913, now Section 9585, Code of 1924, reads:

''Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized, or assented to the alteration and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor.''

The succeeding section of the act defines what constitutes a material alteration, as follows:

"Section 3060-a125. Any alteration which changes:

1.   The date;

2.   The sum payable, either for principal or interest;

3.   The time or place of payment;

4.   The number or the relations of the parties;

5.   The medium or currency in which payment is to be made;

Or which adds a place of payment where no place of payment is specified, or any other change or addition which alters the effect of the instrument in any respect, is a material alteration."

It is noted here that a change of the place of payment is considered a material alteration; and under Section 9585, Code of 1924, a material alteration avoids the instrument. The act of Bollinger in changing the place of payment of this note after it was signed, under these rules, is a material alteration; and, under the evidence, the alteration being made in the presence of the plaintiff, of course said alteration would be known to the plaintiff. The act of the plaintiff in writing in the word "Marion" after the bank designated by Bollinger in the note is such change in the tenor of the note that, under Section 9585, supra, it would avoid the note. Plaintiff's admission of having made this change itself, after it bought the note, would be sufficient to avoid the note in its hands.

It is equally true, under the authority above cited, that the filling in the amount of $2,500 when the agreement was for $1,000 would be an available defense; and, as there was evidence on this question, ordinarily the court should have sent the same to the jury. It is to be remembered as to all of these matters that, under the Negotiable Instrument Law, the payee of a note is not a holder in due course. *Builders L. & C. Co. v. Weimer,* 170 Iowa 444; *Vander Ploeg v. Van Zuuk,* 135 Iowa 350; *Devoy & Kuhn C. & C. Co. v. Huttig,* 174 Iowa 357.

3. BILLS AND NOTES: execution: exceeding authority in filling blanks: effect.

Were these all the matters involved in this case, it would, of necessity, demand a reversal. But the plaintiff pleads that, by reason of certain acts and conduct on the part of the defend-

4. BILLS AND NOTES: execution: alteration and violated authority: ratification.

ants, they acquiesced in and ratified the changes made in the note. The plaintiff claims, and its testimony tends to show, that, about the time this note was due, it repeatedly notified each of the defendants, and that two of the defendants, and possibly the three of them, appeared at the plaintiff bank, and asked for extension of time on the note. The bank advised them that possibly it could give them an extension of time, but that the matter would have to be taken up with some of the other officers of the bank. Two of the defendants then saw the note, and made no objection whatever to it in its then condition. Later, the third defendant appeared with his attorney, the note was inspected, and a copy of the same made.

Defendants' testimony tends to confirm this claim by the plaintiff. It is admitted that, later, Bollinger, the maker of the note, was declared a bankrupt, and that, at the instance of these defendants, their attorney drew up a claim in the bankruptcy matter, which was signed and sworn to and filed in the bankruptcy proceedings, in which they asserted their liability on said note, and asked that their claim be established against said estate for the amount of the note and interest. In due time, the evidence shows, this claim was allowed, and in the settlement of the bankruptcy proceedings a dividend check was forwarded by the referee in bankruptcy, to defendants. There is some confusion in the record at this point. Defendant Leahy admits receiving a check for something over $150, which appears to have been issued in the bankruptcy proceedings as a payment on their claim, based on their liability on this note; but Leahy claims that he understood at the time that it was a dividend on a personal claim of his own against Bollinger, for which he had filed a claim in said estate, and that, after the matter developed in this case, he discovered that the check in question from the referee was a payment on the claim in controversy herein, and that he therefore tendered the amount thereof into court. The question here is whether or not the filing of this claim in the Bollinger bankruptcy matter, procuring the same to be allowed as a claim in said estate, and what Leahy did about receiving and cashing the dividend check issued thereon, amount to a ratification of the alteration of this note, as heretofore re-

ferred to. It being assumed for the moment that the method of handling and altering this note placed the sureties in a position where they could have avoided payment of the same, had they then stood on their rights, does what they did afterward preclude them from now asserting the rights that they then had? In the sworn claim that they filed in the Bollinger bankruptcy proceedings, they asserted their absolute liability as sureties on the note in controversy, and sought to recover from the Bollinger estate the full amount thereof, with interest. By this act on their part they proclaimed that their liability was absolute and fixed on said note in accordance with the terms thereof, as it existed. When they so asserted, we are satisfied that, under the authority hereinafter referred to, they lost the right they had to avoid the instrument on account of the alterations made therein.

In the pleadings and briefs filed, the terms "acquiescence," "ratification," and "estoppel" seem to be used indiscriminately. Accurately speaking, these terms are not synonymous. To acquiesce is to forbear opposition or complaint, while to ratify is to make valid or to confirm. We may acquiesce in an act without approving it. *Austin v. Jones,* 148 Ala. 659 (41 So. 408). The distinction between "ratification" and "estoppel *in pais*" is that in the former the party is bound because of his intention or assent to be bound; while in the latter, he is bound by the law, notwithstanding he had no such intention. *Stiebel v. Haigney,* 134 App. Div. 516 (119 N. Y. Supp. 455). It is the contention herein that by reason of the acts and conduct of the defendants they ratified the alterations in the instrument. It is fundamental in this doctrine that it has application only where the party alleged to have ratified has a full knowledge of all the facts; and if not done with a full knowledge of all the facts, it does not amount to ratification. 2 Corpus Juris 1258, Section 155, and cases there cited, including *Cutler v. Rose,* 35 Iowa 456. The burden of proof is on the party asserting such ratification.

Without now stopping to set out the testimony in this case, we have carefully reviewed all of it, to determine whether or not it is of such character, under the above rule, as to warrant

the court in directing a verdict in favor of the plaintiff; and we are led to the inevitable conclusion that the testimony was of such a character, and sufficient, in our judgment, to warrant the court in directing a verdict in favor of the plaintiff on the ground of ratification.—*Affirmed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.