J. L. NYHART, ET AL., RESPONDENTS, *v.* J. PENNINGTON, ET AL., APPELLANTS.

[Submitted Sept. 28, 1897. Decided Oct. 4, 1897.]

*Contracts—Instructions—Evidence—Agency—Newly Discovered Evidence—Discretion.*

1. CONTRACT—A contract to pay a reasonable commission for services in procuring a purchaser of property, is an express contract to pay, although the amount to be paid involves a question of *quantum meruit.*
2. INSTRUCTIONS—Plaintiffs alleged that defendants had engaged their services in selling certain mines and in securing a purchaser thereof, and had agreed to pay them, if successful, the usual and reasonable commission for such services; defendants denied the employment or any agreement to pay any commission. *Held,* that as no objection was taken to the evidence on the ground that an implied contract and not an express one was proved, there was no error in charging on a theory of an implied contract.
3. NEW TRIAL—*Evidence*—Where the evidence is sufficient to justify the verdict, an order denying a new trial will not be reversed.
4. AGENCY—A witness may testify to the fact that he was the agent of one of the parties to the suit, in the matters in controversy.
5. NEWLY DISCOVERED EVIDENCE—*Discretion*—Where a motion for a new trial is made upon the ground of newly discovered evidence, and the matters set forth in the affidavits filed on behalf of the moving party are contradicted by the counter affidavits, the order denying the motion involves a judicial discretion and will not ordinarily be disturbed.

*Appeal from District Court, Madison county. Theodore Brantly, Judge.*

ACTION by J. L. Nyhart and another against J. Pennington and another. From a judgment for plaintiffs and from an order denying their motion for new trial, defendants appeal. Affirmed.

Statement of the case by the justice delivering the opinion.

Plaintiffs and respondents brought this action against the defendants and appellants to recover the sum of $2,000 alleged to be a reasonable commission for effecting a sale of certain mines in Madison county, Montana, belonging to the defendants.

In their complaint, plaintiffs aver that defendants engaged their services in selling the group of mines referred to, and in securing a purchaser therefor, and agreed with plaintiffs that, if they (plaintiffs) would find or procure a purchaser for said mines at a figure satisfactory to the defendants, defendants would pay plaintiffs for such services the usual and reasonable commission for making such a sale; that, in pursuance of such agreement, plaintiffs did procure a purchaser, who bought the mines for $20,000; and that 10 per centum of the sum of $20,000, or $2,000, is a reasonable commission for the services rendered in procuring the purchaser.

The defendants deny any employment of the plaintiffs as alleged, and any agreement to pay plaintiffs any commission as alleged, or at all, and deny that plaintiffs were the procuring cause of the sale of the mines.

The case was tried before a jury, and a verdict rendered in favor of plaintiffs for $2,000. Defendants moved for a new trial, which motion was overruled. They appeal from the order overruling their motion for a new trial, and from the judgment.

*W. A. Clark*, for Appellants.

*Smith & Word* and *W. S. Barbour*, for Respondents.

Hunt, J.—It is contended by the appellants that the verdict is against the evidence; but we do not think so. The plaintiffs testified substantially that Mr. Pennington, one of the defendants, about the middle of June, 1893, told one of the plaintiffs that if he could find a man who would take a bond on the mines, and sell them, he would pay the plaintiff well for it; that the plaintiff, J. L. Nyhart, undertook to find a purchaser, and in July, after the agreement with the de-

fendant, plaintiff sent his father to see Mr. Freed, of Dillon, Montana, in relation to buying the mines; that subsequently Mr. Freed went up to the property, and was introduced to the defendants by the father of the plaintiffs. Thereafter the sale was finally consummated between Freed and these defendants. Plaintiffs, some six weeks afterwards, asked the defendant Pennington if he was not going to give them any compensation for working up the sale, and getting Freed to take a bond on the mines; but defendant Pennington said that he did not at the time think that Freed had bought the property. The sale was made in the October following these conversations. The evidence further tended to show that the father of plaintiffs was active in the matter, but that his interest was altogether to advance the wishes of his sons, and at the sons' request. Morris M. Freed, the purchaser of the property, stated that one of the plaintiffs and his father first approached him in relation to buying the mines; that he never had been to the mines before; that the father of plaintiffs took him to the property for the first time; that he never had seen either of the defendants before that time; that he soon thereafter agreed upon figures with the defendant Pennington, and took a bond for a deed to the property at an agreed price of $20,-000; and that later on, the money was paid to the defendants.

There was ample evidence introduced by the plaintiffs to support the allegation of the complaint that $2,000 was a reasonable commission for bringing about a sale made under circumstances similar to those in this case. Although part of the plaintiffs' testimony was contradicted by the defendants and their witnesses, we will not analyze such conflict in this opinion, because the case of plaintiffs clearly justified the verdict of the jury.

The contract sued upon was express, in this: that it was definitely agreed between the plaintiffs and defendants that plaintiffs should procure a purchaser for the mines of the defendants, and that, if they did so at satisfactory figures to the defendants, defendants would pay them what was just and reasonable for bringing about such a sale. The plaintiffs

fully sustained the averments of the complaint in this respect. There was, however, an element of value in the contract, growing out of the terms of the express contract as to just what the commissions to be paid to the plaintiffs should be if they were successful in effecting the sale of the mines. So far as this element of the contract was concerned, plaintiffs' recovery thereon was as upon a *quantum meruit.*

The case is like that of *Button* v. *Higgins* (Colo. App.) 38 Pac. 390, where the complaint averred that the defendant was indebted to plaintiff in a certain sum, a balance due for labor and services performed for the defendant "at her special instance and request," and that such services were reasonably worth $25 per month. The court said that the first question to be decided by the jury was whether there was a contract and an agreement by appellant to pay wages, and, second, what such services were worth. "The contract to pay having been alleged," said the court, "it was not necessary that the price should be fixed, or alleged to have been fixed, as contended by counsel; nor did the failure to fix the price invalidate the contract for services, if one was made. The value or price of the services could be established by competent evidence on a *quantum meruit.*"

The defendants complain of several instructions of the court, wherein it is contended that, the issue in the pleadings having been whether or not there was an express contract, it was error for the court to charge that defendants were bound to pay a reasonable commission to the plaintiffs if the jury believed, upon the evidence, that the defendants promised and agreed, expressly or impliedly, to pay plaintiffs for their services, and that plaintiffs had rendered the services with the knowledge and consent of the defendants.

Those portions of the instructions which were premised upon the notion of an implied contract were based upon the belief of the court that the evidence might have disclosed an implied contract. Inasmuch as there was no objection to the introduction of any evidence tending to show an implied contract, the verdict will not be disturbed, because the court in-

structed that there might be a recovery under an implied contract, provided the defendants were not misled, which is not pretended here. Besides, the attention of the court was not called to the point of any variance between pleadings and proof, or doubtless an amendment would have been allowed. It is a case where the complaint may properly be regarded as amended to correspond with the proof.

The court overruled defendants' objection to the following question, asked George W. Nyhart, the father of the plaintiffs : "In all the transactions that you had in reference to this, who were you operating for, or doing the work for ?" The ground of objection was that an agency cannot be proved by the declarations of the agent himself. Appellants invoke a generally correct rule of law, but an inapplicable one. Plaintiffs were not trying to prove agency by the declarations of the agent, but by his sworn testimony to the fact. This they could do. The rule is that the declarations of an agent are not competent to establish the fact of his agency. But the declarations of the agent are very different from his testimony to prove the fact of his agency. *Ream* v. *McElhone* (Kan. Sup.) 31 Pac. 1075; *Lawall* v. *Groman* (Pa. Sup.) 37 Atl. 98; *Nostrum* v. *Halliday* (Neb.) 58 N. W. 429.

Another ground of defendants' motion for a new trial was newly-discovered evidence in relation to certain overtures alleged to have been made by plaintiffs to one of the defendants' witnesses, in order to influence the testimony of such witness. Plaintiffs denied all such allegations by counter affidavits, and the court, in its discretion, declined to sustain the motion. We cannot disturb the ruling by declaring that the court unwisely exercised its discretion.

Several minor grounds are urged, but, none being well taken, the judgment and order appealed from must be affirmed.

*Affirmed.*

PEMBERTON, C. J , and BUCK, J . concur.