ARNOLD ET AL., RESPONDENTS, *v.* GENZBERGER ET AL., APPELLANTS.

(No. 7,109.)

(Submitted October 30, 1933. Decided March 19, 1934.)

[31 Pac. (2d) 396.]

*Mr. Earle N. Genzberger,* for Appellant, submitted a brief and argued the cause orally.

*Mr. George D. O'Toole* and *Mr. N. A. Rotering,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Silver Bow county.

W. M. Arnold and James J. Brett, copartners under the name of Arnold-Brett Company, a firm of plumbing contractors in Butte, are plaintiffs and respondents, and Gertrude Genzberger, Jennie G. Sternfels and Meyer Genzberger are defendants and appellants. Three lots in block 65 of the original town site of Butte are involved. Lot 20 is owned by the defendants Gertrude Genzberger and Jennie G. Sternfels. Lot 19 is owned by the defendant Gertrude Genzberger. Lot 18 is owned by the defendant Meyer Genzberger. A double building stands partly on lot 20 and partly on lot 19. This structure was in reality built as two separate buildings with a dividing wall between. There is no building on lot 18, although the lot is inclosed by a wall and is a part of the premises at one time known as the Columbia Hospital. The buildings are known as Nos. 400–402 South Washington Street. After the Columbia Hospital was closed several years ago, the premises remained vacant until about the 1st of March, 1928, when one R. G. Johnson went to Butte from Minneapolis and entered into a verbal agreement with Meyer Genzberger, who looked after the rental of the property. Johnson shipped a carload of rooming-house furniture from Minneapolis, and was desirous of open-

ing a rooming-house in Butte. He went to see Genzberger relative to other property under the control of Mr. Genzberger. The latter told him of the old Columbia Hospital property, and took him to see it. The property was in a run-down condition. After some negotiation it was agreed between them that Johnson should move his furniture into the property, and that the building was to be jointly repaired and improved. Both agree that Genzberger was to pay for the necessary repairs on the roof and the plumbing and heating plant, and would pay one-half of the cost of material for fixing windows. Genzberger claims that his expenditures were not to exceed $500. Johnson claims that there was no limit. Genzberger claims that Johnson was to have a year's rent free from and after March 1, 1928. Johnson claims that he was to have a year's free rent from the time the building was made habitable. Johnson was to put his work and that of his wife against the money advanced by Genzberger for the repairs. Genzberger hired a man to fix the roof and a plumber to fix the plumbing and heating plant. He paid these workmen. He also paid for one-half of the material used in fixing the windows.

The place was fixed up for a rooming-house. Johnson began taking in roomers about May, 1928, and continued to operate the place as a rooming-house until either March or April of 1929. He claims that Genzberger agreed to have the plumbing changed and new plumbing equipment installed so as to change the property over from a rooming-house to an apartment house; and he claims that at intervals during the fall of 1928 and the spring of 1929 he called on Genzberger to employ a plumber to make the necessary changes and conversions; that about January or February, 1929, he went to Genzberger's office and again requested that a plumber be sent and that Genzberger called one Selzer, the plumber who had done the previous work on the building in the spring of 1928, and endeavored to have him do the work, but he was unable to get Selzer, so he told him to go ahead and get a plumber himself; that he then negotiated with the Arnold-Brett Plumbing Company, and, acting as agent for Genzberger, employed them

to do the work. Genzberger denies this and, on the contrary, claims that he never agreed to pay for the additional plumbing necessary to convert the premises from a rooming-house to an apartment house; that Johnson told him that he could derive a larger income from apartments than from rooms, and that he was going to go ahead and have the necessary changes made, and later advised him that he had made arrangements with the Arnold-Brett Company to have the plumbing done, and was to pay for the work from his rental collections. The plumbing company began the work on March 6 and completed the job on the fifteenth day of August, 1929. The work consisted of the installation of plumbing such as sinks, toilets and other plumbing equipment necessary for eight apartments and two or three extra rooms. The total cost of the plumbing installation was $1,990.55. All agree that Genzberger had no direct negotiations with the Arnold-Brett Company; that all negotiations were had with Johnson. Johnson and Arnold-Brett claim that the verbal agreement for the plumbing was between Johnson, acting as agent for defendants on the one side, and Arnold-Brett on the other.

Genzberger was on the premises several times during the time the work was in progress. Arnold testified to seeing him there, but specifically stated that he did not say anything to him about the pay for the plumbing or about who was to be liable for the expense.

Genzberger admits that he had charge of the renting of the property for Mrs. Genzberger and Mrs. Sternfels. He says that he consulted them about the original agreement with Johnson, and that they told him to go ahead and spend the $500 and give Johnson the free rent for a year from March 1, 1928. No monthly statements were rendered by the Arnold-Brett Company to Genzberger. Arnold testified that he thought he sent a bill to Genzberger and one to Johnson about August, 1929, after the work had been completed. Genzberger testified that he never received such a bill, stating that he never knew the work was charged to the defendants or that the defendants had any liability therefor, until October 23, when he saw a

notice of the filing of the lien by Arnold-Brett. Mrs. Genzberger testified that she never knew the work was charged to her or her co-owner until she was served with summons in the first action, about April 3, 1930.

The record discloses that about the first of April, 1930, Arnold-Brett Company began an action in the district court of Silver Bow county, seeking to foreclose the lien against Gertrude Genzberger, Jennie G. Sternfels, Meyer Genzberger, and R. G. Johnson. This was cause No. 32272. This case went to trial on October 29, 1930, and on October 31 a motion for a nonsuit was sustained and the action was dismissed. The present action was filed on November 3, 1930. It will be observed that the parties in the two suits are identical, except that Johnson was dropped as a defendant in the second action.

The complaint alleges the ownership of the lots by the different defendants; that at the time the work was done there was a two-story brick building on the lots; that the building was formerly known as the Columbia Hospital; that during the time the building was remodeled into an apartment house containing eight apartments, R. G. Johnson and his wife were tenants occupying the building under contract with the defendant Meyer Genzberger, who then was the husband of the defendant Gertrude Genzberger, and who was the agent of the defendants Gertrude Genzberger and Jennie G. Sternfels, and that Meyer Genzberger exercised dominion and control over the premises by virtue of his partial ownership of the property and under his authority as agent, all subject to the possessory rights of the tenant Johnson; that the Arnold-Brett Company was a copartnership doing business under the firm name of Arnold-Brett Company of Butte; that prior to the sixth day of March, Meyer Genzberger entered into an oral contract with R. G. Johnson, tenant in possession of the premises, under and by virtue of the terms of which Johnson agreed to reconstruct the interior of the building so as to convert it into an apartment house, the tenant to furnish the necessary labor and to pay for one-half of the materials necessary for such purpose, exclusive of roof repairs and plumbing, and that

Johnson was to have free occupancy of the building for one year after the conversion; that Johnson fully performed his part of the contract, and that Meyer Genzberger failed, neglected and refused to perform his part thereof; that Meyer Genzberger authorized and empowered Johnson to have the necessary plumbing and appliances installed in the building in order to make the conversion, and that in pursuance of such authority and directions, Johnson made an agreement with plaintiffs for the repairs, replacement and furnishing of the necessary additional plumbing appliances and fixtures in the building, and that as a result of the agreement Arnold-Brett did furnish the supplies and did do the plumbing, all in accordance with the lien thereafter filed by them and in the amount of $1,990.55, and that no part thereof has been paid; that all the work was done and the materials furnished between March 6 and August 15, 1929, and during which time Meyer Genzberger was the agent of the other defendants; that during the progress of the work Meyer Genzberger inspected the same and made no objection thereto, although he continued to exercise dominion and control over the premises subject to the rights of the tenant Johnson; that the defendants Meyer Genzberger, Gertrude Genzberger and Jennie G. Sternfels did accept and retain the benefits of the work and improvements, and that by reason of such acceptance were estopped to deny liability or to repudiate the terms of the contract between the defendant Meyer Genzberger and the tenant in possession, R. G. Johnson; that within ninety days after the completion of the work, and on the twenty-third day of October, 1929, plaintiffs filed their mechanic's lien under the provisions of sections 8339 et seq., Revised Codes of 1921, the lien being filed against the defendants Gertrude Genzberger, Jennie G. Sternfels, and R. G. Johnson.

The complaint further alleges that through error the building which was located upon lots 18, 19 and 20, in block 65 of the original town site of Butte, was described as on lot 20 in block 65, and that lots 18 and 19 were not mentioned in the lien notice; that approximately seventy per cent. of the work,

labor and services performed and materials furnished and installed were installed in the building or the part of the building on lot 20 in block 65, the reasonable value of such part of the total improvement being $1,400.

The complaint prayed for judgment against each and all the defendants in the sum of $1,990.55, with interest, or judgment against Meyer Genzberger in the same sum, with interest, and judgment against the defendants Gertrude Genzberger and Jennie G. Sternfels for the foreclosure of the mechanic's lien in the sum of $1,400, with interest, and for attorneys' fees and costs.

A copy of the mechanic's lien filed in the office of the county clerk was attached to the complaint as an exhibit. The lien notice carried a copy of the account, which was apparently carried in the name of Johnson, agent.

The defendants filed a motion to require the plaintiffs to make the complaint more definite and certain by separately stating and numbering causes of action, each to contain a statement of work done on each lot with the enumeration and itemization thereof, and to separately state the causes of action (a) for the foreclosure of the lien on lot 20, (b) the cause of action against Gertrude Genzberger for work done on lot 19, (c) the cause of action against Meyer Genzberger upon the contract, and (d) the contract between plaintiffs and defendants, or part of them. This motion was overruled. The defendants then filed demurrer on the grounds: (1) That the complaint did not state facts sufficient to constitute a cause of action; (2) that there was a defect of parties in that Johnson, one of the lienees mentioned in the notice of lien, had not been joined; (3) that there was a misjoinder of parties defendant, in that a lien was alleged against Gertrude Genzberger and Jennie G. Sternfels and Johnson, and that the name of Meyer Genzberger did not appear in the notice and claim of lien; (4) that causes of action were improperly united in that it appeared from the notice and claim of lien that the lien was claimed upon lot 20 in block 65, and at the same time plaintiffs were trying to assert a lien on lots 18, 19 and 20; (5) that causes

were improperly united, in that a cause of action for the foreclosure of a lien on lot 20 in block 65 against Gertrude Genzberger and Jennie G. Sternfels was united with a cause of action against Gertrude Genzberger on lots 18 and 19 in which Jennie G. Sternfels and Meyer Genzberger had no interest, and that both of the last-named causes of action were improperly joined with one against Meyer Genzberger upon a contract; (6) that an action for the foreclosure of a lien was improperly joined with a cause of action for an alleged breach of contract.

The demurrers were overruled in their entirety. Separate answers of the three defendants were then filed. The answer of Gertrude Genzberger admitted that she owned lot 19 in block 65, and that she and Jennie G. Sternfels owned lot 20 in that block; also that there was a two-story brick building standing upon lots 19 and 20, and that Meyer Genzberger was her husband. She denied the other material allegations of the complaint, including retention of benefits, ratification and estoppel, and asserted an affirmative defense to the effect that the Arnold-Brett Company had not, prior to the commencement of the action, published a partnership notice in accordance with the provisions of section 8020 of the Revised Codes of 1921.

The defendants Gertrude Genzberger and Jennie G. Sternfels by way of affirmative and special defense alleged that the action was barred by a judgment of dismissal made by the district court of Silver Bow county in cause No. 32272, wherein the Arnold-Brett Company was plaintiff, and the answering defendants Meyer Genzberger and R. J. Johnson were defendants, which judgment it was alleged was duly given and made on or about November 1, 1930, and was duly entered and docketed on or about that date. It was further alleged that by reason of that judgment of dismissal, and by reason of the failure to appeal from it or move to have it vacated, modified or set aside, it became final and thereby constituted a bar to the present action. All other allegations of the complaint were denied.

The answer of Meyer Genzberger admitted ownership in himself of lot 18, ownership by Gertrude Genzberger of lot 19, and by Gertrude Genzberger and Jennie G. Sternfels of lot 20; that Johnson and his wife were tenants occupying the building known as Nos. 400–402 South Washington Street under a contract with the answering defendant, and that he was the husband of Gertrude Genzberger; denied that there was any building on lot 18; admitted that he entered into an oral contract with R. G. Johnson some time prior to March 6, 1929; but denied that the contract was the same contract set forth in the complaint. He denied the other material allegations of the complaint. As an affirmative defense he alleged the failure of the plaintiffs to publish their partnership notice.

The answer of the defendant Jennie G. Sternfels was practically identical with the other separate answers.

Replies to the separate answers denied generally all allegations of new matter, except the failure to file or publish the partnership certificate. With reference to the former action and the plea of *res judicata,* the replies admitted the dismissal of the action, but denied that the action constituted a bar to the present action.

Although the action was one in equity, a jury was impaneled for the trial of the case and a general verdict was returned in favor of the plaintiffs for the full amount claimed in the complaint, with a finding of all the issues in favor of the plaintiffs and against the defendants.

At the trial the defendants objected to the introduction of any testimony under the pleadings, and particularly objected to the introduction of the testimony of R. G. Johnson taken at the trial of the former action numbered 32272, whereat he was sworn and testified. Between that time and the trial of the instant case Johnson died. His testimony given in the former case was offered and received in evidence. The defendants objected on the ground that the instant action was not between the same parties, in that Johnson was omitted as a party defendant, whereas he was a party defendant in the previous action, and upon the ground that in the previous action a

judgment was sought against him, thereby creating a motive or lack of motive for testifying, and because the case did not come within the provisions of subdivision 8 of section 10531, Revised Codes 1921.

During the progress of the trial timely objections were made to the introduction of testimony. At the close of plaintiffs' case a motion for nonsuit was made. At the close of all the testimony defendants made a motion for a directed verdict. Objections were made to some of the instructions given by the court, and to the refusal of the court to give other instructions offered by the defendants. Defendants requested that special interrogatories be submitted to the jury touching the issues. This request was refused, and the refusal is urged as error. After the verdict the defendants made a motion to reject the verdict. This motion was predicated very largely upon the grounds urged in support of the motions and objections previously made in the course of the trial, and it was overruled. The court then entered its judgment for the full amount demanded by plaintiffs in conformity with the verdict of the jury.

Upon the issues with reference to the mechanic's lien, the court found generally in favor of plaintiffs and against defendants Gertrude Genzberger and Jennie G. Sternfels, and found that the amount due to plaintiffs was for work and labor done and performed and materials furnished in and about the building known as the Columbia Hospital, 400–402 South Washington Street, located on lot 20 and a portion of lot 19; that lot 20 was owned by Gertrude Genzberger and Jennie G. Sternfels and lot 19 by Gertrude Genzberger; that the building and lot 20 and the interest of the defendants Gertrude Genzberger and Jennie G. Sternfels therein were subject to the lien of plaintiffs for a portion of said sum, to-wit, the sum of $1,440, together with interest and costs. The court in the decretal part of the judgment adopted the verdict of the jury as findings of fact and conclusions of law, and proceeded to enter judgment in favor of the plaintiffs for the amount demanded, which, with interest, amount to $2,433.78, and costs

in the sum of $97.75, not including attorneys' fees. The judgment ordered the building and lot 20 sold to satisfy the plaintiffs' demand in accordance with the mechanic's lien, and for the sum of $1,440, with interest, amounting to $320.64. The judgment specifically declares the building and lot 20 subject to the mechanic's lien and directs that, in case this property did not sell for enough to satisfy the judgment, a deficiency judgment should be docketed against the defendants Gertrude Genzberger and Jennie G. Sternfels. The judgment further provides that execution issue against the defendants for the entire amount, except that no execution shall issue against the defendant Meyer Genzberger for any part of the attorneys' fees or for the expense of sale. Motion for new trial was made and overruled.

Seventy-nine assignments of error are urged by appellants on this appeal. It will not be necessary to consider all the assignments. We will only discuss the more important ones.

The action was not barred by reason of *res judicata*. The defendants Gertrude Genzberger and Jennie G. Sternfels pleaded that a judgment of dismissal had been entered in cause No. 32272 theretofore tried to the same court. Plaintiffs admitted that such an action had been dismissed. No judgment or judgment-roll was offered in evidence, and this court is without information on the subject, except that the record and briefs disclose that the former action was dismissed upon motion for nonsuit. The important fact is that defendants did not plead, and it was not admitted, and certainly cannot be assumed, that there ever was a judgment on the merits entered in cause 32272. Defendants in their answers denominated it a ''judgment of dismissal,'' and defendants' attorney in his brief refers to ''the action having terminated in a nonsuit.'' A nonsuit is not a judgment on the merits, and nothing short of a judgment on the merits can prevent a new action. In this state that matter is settled by statute. Section 9320, Revised Codes 1921, reads as follows: ''A final judgment dismissing the complaint, either before or after a trial, does not prevent a new action for the same cause of

action, unless it expressly declares, or it appears by the judgment-roll, that it is rendered upon its merits."

In the case of *Bennetts* v. *Silver Bow Amusement Co.*, 65 Mont. 340, 211 Pac. 336, 339, this court quoted with approval the following language from Black on Judgments, second edition, section 699: "It is a settled and inflexible rule that a judgment of nonsuit is not a judgment upon the merits, and therefore is no bar to another suit upon the same cause of action."

In *Glass* v. *Basin & Bay State Min. Co.*, 34 Mont. 88, 85 Pac. 746, this court held that in the absence of the judgment-roll no presumption can be indulged that the judgment was rendered on the merits. (See, also, *United States F. & G. Co.* v. *Whittaker*, (C. C. A.) 8 Fed. (2d) 455; *August* v. *Burns*, 79 Mont. 198, 255 Pac. 737; *McGinley* v. *Maryland Casualty Co.*, 85 Mont. 1, 277 Pac. 414.)

Nonsuit is not a proper practice in an action in equity (*Streicher* v. *Murray*, 36 Mont. 45, 92 Pac. 36; *Stevens* v. *Trafton*, 36 Mont. 520, 93 Pac. 810; *Le Vasseur* v. *Roullman*, 93 Mont. 552, 20 Pac. (2d) 250), but defendants apparently employed it successfully in cause 32272, and again urged it on the trial of this action, and argue most vehemently here that the judgment should be reversed by reason of the failure of the district court to sustain their motion for a nonsuit.

We will now consider the action as it was directed against Meyer Genzberger personally. Was the action properly prosecuted against him, and can the judgment stand? He protested by demurrer and at every stage of the proceeding. He particularly objected to an instruction given to the jury, defining the contingencies under which he could be held personally liable.

Under the theory of plaintiffs' case, Meyer Genzberger was only an agent for Mrs. Genzberger and Mrs. Sternfels. It was not proved that he owned any interest in the building or in the two lots on which the building stood. No claim was made that he ever did anything for himself in the premises. The plaintiffs' theory of the case negatives any personal participa-

tion by Meyer Ginzberger. Everything indicates that whatever he did in the matter was done as agent for the owners. That being the case, he could not become personally responsible under the terms of section 7968, Revised Codes 1921, which reads as follows: "One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the following cases, and in no other: 1. When, with his consent, credit is given to him personally in a transaction; 2. When he enters into a written contract in the name of his principal, without believing, in good faith, that he has authority to do so; or, 3. When his acts are wrongful in their nature." The record in nowise brings Meyer Genzberger within the provisions of this section. He never sought or received credit for himself; he signed no written contract for the plumbing; and there is no claim by plaintiffs that his acts were wrongful. Quite the contrary, plaintiffs are attempting to stand and recover on his alleged acts as agent.

It cannot be said that plaintiffs are attempting to hold Meyer Genzberger under section 7972, Revised Codes 1921. That section provides: "If an agent employs a subagent without authority, the former is a principal and the latter his agent, and the principal of the former has no connection with the latter." To hold Meyer Genzberger under that section, plaintiffs obviously would of necessity be forced to forego any claim against Mrs. Genzberger and Mrs. Sternfels, the principals of Meyer Genzberger. Apparently, plaintiffs really proceeded upon the theory that Johnson was lawfully appointed a subagent. In that case, section 7973 would come into play. It provides: "A subagent, lawfully appointed, represents the principal in like manner wth the original agent, and the original agent is not responsible to third persons for the acts of the subagent." Thus it must be observed that if Johnson was a subagent lawfully appointed, as plaintiffs claim, Meyer Genzberger, the original agent, is not responsible to plaintiffs who are third persons. No judgment should have been entered against Meyer Genzberger. This would have been in accord-

ance with plaintiffs' principal theory of the case, by which they were bound. (*Waite* v. *C. E. Shoemaker & Co.*, 50 Mont. 264, 146 Pac. 736; *Columbus State Bank* v. *Erb*, 50 Mont. 442, 147 Pac. 617; *Conrad Mercantile Co.* v. *Siler*, 75 Mont. 36, 241 Pac. 617; *Moss* v. *Goodhart*, 47 Mont. 257, 131 Pac. 1071.)

The judgment against Meyer Genzberger having been erroneously entered, under authority of section 8805, Revised Codes 1921, this court may direct entry of a proper judgment and thereby correct the error. (See *Billings* v. *Missoula White Pine Sash Co.*, 88 Mont. 322, 292 Pac. 714; *In re Connolly's Estate*, 79 Mont. 445, 257 Pac. 418; *McDaniel* v. *Hager-Stevenson Oil Co.*, 75 Mont. 356, 243 Pac. 582; *Heater* v. *Boston etc. Corp.*, 75 Mont. 532, 244 Pac. 501; *Alley* v. *Butte etc. Co.*, 77 Mont. 477, 251 Pac. 517; *State ex rel. United States F. & G. Co.* v. *District Court*, 77 Mont. 594, 251 Pac. 1061.)

Error is urged by reason of the submission of the general issue to the jury and the refusal to submit special interrogatories. Although the cause was in equity, it was not reversible error for the court to submit the general issue to the jury; neither was it error for the court to refuse to submit special interrogatories. (*Hoskins* v. *Scottish Union & Nat. Ins. Co.*, 59 Mont. 50, 195 Pac. 837; *Moss* v. *Goodhart*, supra. Compare *Vesel* v. *Polich Trading Co.*, ante, p. 118, 28 Pac. (2d) 858.)

Objection was made to the introduction of the testimony of the deceased tenant, Johnson, taken at the former trial, wherein the parties were the same, except that Johnson himself was there a party defendant. The objection was that the testimony was not admissible under section 10531, subdivision 8, Revised Codes 1921. It is admitted that both actions were for the foreclosure of the Arnold-Brett lien. This court, in speaking of the admissibility of such testimony, said: "Precise nominal identity of all the parties is not necessary in order to make the testimony competent." (*O'Meara* v. *McDermott*, 40 Mont. 38, 104 Pac. 1049, 1055; see, also, *Damm* v. *Damm*, 82 Mont. 239, 266 Pac. 410; *In re Colbert's Estate*, 51 Mont.

455, 153 Pac. 1022.) The true rule is laid down in Jones' Commentaries on Evidence, as follows: "The rule is that such evidence is proper, not only when the point in issue is the same in a subsequent suit between the same parties, but also for or against persons standing in the relation of privies in blood, privies in estate or privies in law." (Vol. 3, 2d ed., p. 2158.)

No error was committed in receiving otherwise competent evidence of the witness Johnson. His testimony was, however; subject to all the objections that could have been urged against it if he had been personally present and testifying. The general rule under which his testimony as a whole could be received in this case did not *ipso facto* render admissible testimony otherwise inadmissible.

Specific objections were made to the testimony of Johnson. These objections involved the question of his authority as agent, and the effect of the statute of frauds upon the whole transaction. It was urged that the contract was invalid under the provisions of sections 10613 and 7519, Revised Codes 1921. These objections may be considered in connection with the subject of ratification and retention of benefits.

Both parties devoted much space to a discussion of the contract or agreement between Genzberger and Johnson, entered into about the first of March, 1928. Plaintiffs contended that the conversion of the premises at 400–402 South Washington Street from a rooming-house to an apartment house was a part of that agreement. Defendants denied this, and maintained that they never at any time agreed to pay for the plumbing incident to such conversion. We do not think that the point is controlling, or even important, in the consideration of this case. Plaintiffs were not interested in the original contract. They were not parties to it and the contention as to whether it was executed or executory is really no concern of theirs. So we say here that contract need not be put to the test to determine the rights of the parties. Plaintiffs are only interested in the agreement for the plumbing installed by them. It makes no difference to them whether they were employed as a result of the March, 1928, contract, or by virtue

of an entirely new and separate authorization given to Johnson a year later.

It was not error to admit the testimony of Johnson relative to the facts leading up to and surrounding the installation of the plumbing. This action is not prosecuted to recover on the contract between Johnson and Genzberger. The rule as to the admission of such evidence is well recognized by the authorities. "The statute of frauds obviously renders oral evidence of a contract within its scope incompetent in an action thereon; but it is not a necessary result of the rule that no action shall be brought on an oral contract that no evidence shall be given of such contract under any circumstances. When the contract is offered as evidence merely and not for the purpose of founding a claim, it may be received." (27 C. J. 379. See, also, *Perkins* v. *Allnut,* 47 Mont. 13, 130 Pac. 1; *Offeman* v. *Robertson-Cole Studios, Inc.,* 80 Cal. App. 1, 251 Pac. 830; *Sanford* v. *Atwood,* 44 Conn. 141; *Smith & Egge Mfg. Co.* v. *Webster,* 87 Conn. 74, 86 Atl. 763; *Continental Oil Co.* v. *Bell,* 94 Mont. 123, 21 Pac. (2d) 65.)

The question of the Johnson agency or subagency would of necessity be a controlling factor in the case if plaintiffs had relied upon the direct and simple claim that Johnson was in fact such agent, with full legal power to bind the defendant owners, but such is not the case. While plaintiffs do allege that Johnson was the duly qualified agent and that he made the agreement with them for his principals as such, they pleaded other and additional facts for the purpose of obviating the question of actual authority on the part of Johnson at the time he contracted with plaintiffs. But for the additional allegations we would, of course, consider the matter of Johnson's agency in strict accordance with statutory provisions and legal declarations pertaining to the general law of agency. As the matter stands here it is not necessary to construe the different statutes and principles of law which would have controlled in the absence of the special plea. A discussion of such principles would necessarily be followed by a statement that the usual principles of agency and the special

statutes, particularly the statute of frauds, do not apply because of such plea. We therefore proceed directly to a consideration of the additional plea and its effect on the whole transaction.

The complaint alleges that defendants did accept and retain the benefits of the materials and labor furnished by plaintiffs, and that they are therefore estopped to deny liability therefor. This allegation in substance charged that defendants ratified whatever contract there was for the installation of the plumbing. If there was such a ratification by the defendants, then clearly all the alleged errors in admission of testimony, violation of the statute of frauds, and so forth, become immaterial, because such a ratification. if made, related back to the time when the contract was made and became in effect a binding contract as of that date. (1 Clark & Skyles on Law of Agency, p. 360; *Larson* v. *Marcy*, 61 Mont. 1, 201 Pac. 685; *Schnepel* v. *Mellen*, 3 Mont. 118; *Johnston* v. *Milwaukee & Wyoming Inv. Co.*, 49 Neb. 68, 68 N. W. 383, 385.) "The ratification * * * operates upon the act ratified precisely as though authority to do the act had been previously given." (*Johnston Case*, last cited.) It is true that before there could be a ratification by defendants it must appear that all the material facts were known to them. (*Pew* v. *McLeish*, 62 Mont. 437, 205 Pac. 235; *Weidenaar* v. *New York Life Ins. Co.*, 36 Mont. 592, 94 Pac. 1; 1 Mechem on Law of Agency, p. 285, sec. 393.)

The evidence is conflicting as to whether defendants did become cognizant of all the material facts during the time when the work was being done, or prior to the time when the mechanic's lien was filed by plaintiffs on October 23, 1929. It is, however, clear that from the time the lien was filed the defendants did have notice of the material facts and of the fact that they were being charged with the work and materials. It does not appear that there was any affirmative declaration of ratification by defendants; hence in this case, under the evidence, there could have been only an implied ratification, or a ratification presumed from the defendants' reten-

tion of the benefits (or acquiescence and delay). If defendants, with full knowledge of the facts, retained the benefits of the material and labor furnished by plaintiffs, and at the same time made no offer to restore such benefits so far as possible, or to show that such restoration was impossible, then they are deemed to have ratified what was done. Such ratification, under the authorities, did operate to bind the defendants, just as though Johnson had been acting with full authority as their agent when he made the contract with plaintiffs for the materials and labor.

In 1 Mechem on Agency, second edition, section 436, page 318, it is said: "When the principal discovers that there has come into his hands the proceeds of an unauthorized act done by one who assumed therein to act as his agent, to retain such proceeds is ordinarily to ratify the act. If he would repudiate the act in such a case he must, ordinarily, so far as it is possible, restore or offer to restore what he has received. * * * And this he must do within a reasonable time." "The voluntary retention being in these cases the evidence of ratification, an involuntary retention would not be so cogent. Hence if return is not possible, as where it cannot be done without substantial injury, or where what has been received has been disposed of, or has been consumed in the expected way, before notice of the act; or where what was received was personal services accepted before notice, and the like, the rule would not apply." (See, also, *First Nat. Bank* v. *Oberne*, 121 Ill. 25, 7 N. E. 85; *Harding* v. *Parshall*, 56 Ill. 219; *National Improvement & Const. Co.* v. *Maiken*, 103 Iowa, 118, 72 N. W. 431; *Higbee* v. *Trumbauer*, 112 Iowa, 74, 83 N. W. 812.)

In the case of *Hobkirk* v. *Green*, 26 Misc. 18, 55 N. Y. Supp. 605, the court said: "After being fully apprised of all the acts of an alleged agent in accepting plaintiff's proposition to furnish an engine and fittings for pumping water into his house, defendant permitted the attachments connecting his premises to remain, and continued to derive the benefits resulting therefrom, until he sold his premises, together with his

interest. * * * Held, that the acts of the agent were impliedly ratified." The court said: "It appears from the undisputed evidence that the defendant, after being fully apprised of all the acts of Sparr in the matter, permitted the attachments connecting his premises with said engine to remain, and continued to derive the benefits and advantages resulting therefrom. * * * Under the circumstances, the defendant, by accepting such benefit, impliedly ratified the alleged unauthorized acts of Sparr."

The supreme court of Georgia considered a case wherein a school was held for the purchase price of furniture bought by an unauthorized agent. There the school authorities, as soon as they learned of the facts, notified the vendor of the furniture that they had not authorized the purchase and that they would not be bound thereby, but they continued to use the furniture. The court said: "Had they stopped here, and caused this property to be taken from their building, or stored it unused there or elsewhere, their claim would have been perfectly sustained; but, after having disclaimed title, the fact remains that they continued to use it for a year or more, having all the benefits of it, and, notwithstanding their disclaimer, kept it for the use of the school. It must be held that such action ratified the purchase." (*Haney School Furniture Co.* v. *Hightower Bapt. Institute,* 113 Ga. 289, 38 S. E. 761, 763.)

The defendants here denied retention of benefits, estoppel, and ratification. The record discloses, however, that the property was still in use in the building at the time of the trial on January 11, 1932, and that defendants had known of the claim of plaintiffs at least from the date of the filing of the lien on October 23, 1929.

The evidence in this case discloses that the major portion of the work done by the plaintiffs was the installation of sinks in various rooms of the building in question, and the installation of pipes in connection therewith so that running water would be supplied to the rooms in which the sinks were installed, and thereby the building could be utilized as an

apartment house. The record is silent as to the manner in which the various fittings were installed. It cannot be determined therefrom whether these appliances could be removed without substantial injury to the premises. If these appliances could not be removed without substantial injury, then the rule of retention of benefits heretofore discussed is without application, and ratification did not result. The question whether these appliances could be removed was one of fact. (*Walker Dishwasher Corp.* v. *Medford Trust Co.,* 279 Mass. 33, 180 N. E. 517, 81 A. L. R. 1437.) The evidence from which this conclusion of fact might be drawn is not in the record. Plaintiffs, by alleging ratification and issue being joined thereon by the defendants, assumed the burden of proof of that fact. (Sec. 10616, Rev. Codes 1921; 1 Mechem on Agency, 2d ed., 352.)

In the state of the record before us, the question is fairly presented: On which party was it incumbent to produce evidence on the question whether these appliances could be removed without substantial injury to the building? The burden of proving ratification was upon the plaintiffs throughout the case, for the burden of proof, when once determined, is not changed in any aspect of the cause, except by legal presumption, and this burden remains throughout the trial. (2 Jones on Evidence, 2d ed., 859.) During the progress of a trial, however, if a party produces evidence tending to establish his allegations sufficient to establish a prima facie case, the burden of producing evidence to overcome the prima facie case shifts to the adversary. (Id., 850.)

Plaintiffs produced on the trial of this cause sufficient evidence to bring their case within the general rule with reference to the ratification of a contract by the retention of benefits, which rule is subject to the exception noted above, i. e., that by the retention of the benefits the defendants did not ratify if they were unable to restore, or offer to restore, the benefits so received, by reason of their inability to remove the plumbing appliances from the building without substantial injury thereto. One who seeks to bring himself within an

exception declared by statute must produce evidence to do so. (*Hill* v. *Smith*, 260 U. S. 592, 43 Sup. Ct. 219, 67 L. Ed. 419; *Kreitlein* v. *Ferger*, 238 U. S. 21, 35 Sup. Ct. 685, 59 L. Ed. 1184.)

As a matter of pleading, this court has held that it is unnecessary to the statement of a cause of action for a pleader to negative exceptions to a general rule of law, the basis of the cause of action set forth. (*Commonwealth Public Ser. Co.* v. *City of Deer Lodge*, ante, p. 15, 28 Pac. (2d) 472.) If a plaintiff is not required to negative an exception to a general rule by appropriate averments in his complaint, manifestly he need not, in order to establish a prima facie case, produce evidence tending to establish himself within such exception.

The burden was on the defendants in this case, if they would avoid the consequences of the retention of benefits, to produce evidence tending to place them without the application of the general rule and bringing them within the recognized exceptions. This they failed to do.

It may be said that part of the benefits which were received by the defendants could not be restored, in that it consisted of ▉▉▉▉ work and labor performed; but if a contract is ratified in part, it is ratified in its entirety. (Sec. 7941, Rev. Codes 1921; *New Home Sewing Mach. Co.* v. *Songer*, 91 Mont. 127, 7 Pac. (2d) 238; 1 Mechem on Agency, 2d ed., 301; *United States Nat. Bank* v. *Chappell*, 71 Mont. 553, 230 Pac. 1084; 2 C. J. 873.)

The judgment against Meyer Genzberger is reversed. It is affirmed as against the other defendants. The district court is directed to correct the judgment in accordance with this opinion.

JUSTICES MATTHEWS and ANDERSON concur.

MR. CHIEF JUSTICE CALLAWAY, Dissenting: It seems to me that, if we follow the law, the judgment cannot be sustained upon any conceivable theory.

1. As to the pleadings. By resort to extreme liberality it may be said that the complaint on its face states a cause of

action against Meyer Genzberger, but the facts show that plaintiffs have no cause of action against him. To this all members of the court agree.

On the theory that the allegations respecting him are true, the complaint, liberally construed, may be held to state a cause of action against Gertrude Genzberger and Jennie G. Sternfels. The facts show plaintiffs have no cause of action against them.

2. I do not agree with what is said respecting a "nonsuit" in an equity case. The majority overlook the force of what is said on the point in *Streicher* v. *Murray*, 36 Mont. 45, 92 Pac. 36, *Stevens* v. *Trafton*, 36 Mont. 520, 93 Pac. 810, *School District No. 2* v. *Richards*, 62 Mont. 141, 205 Pac. 206, and *Le Vasseur* v. *Roullman*, 93 Mont. 552, 20 Pac. (2d) 250.

Moreover, in reply to a specific recitation of the facts from which *res judicata* necessarily follows, plaintiffs admitted the cause (not the complaint) was dismissed, thus in effect admitting defendants' allegations. Plaintiffs' plea, "Deny that they are bound or precluded from maintaining this action," is a bare conclusion of law.

3. The majority overlooks the allegation of the complaint, referring to the void contract alleged to have been entered into between Johnson and Genzberger, "that in pursuance of said contract the said tenant R. G. Johnson, fully performed his part thereof, but the defendant, Meyer Genzberger, failed, neglected and refused, and still fails, neglects and refuses to perform his part thereof, as hereinafter set forth." There is no allegation that this contract was between the owners and Johnson, or between the owners by their authorized agent and Johnson; the allegation is that under the terms of the contract aforesaid Meyer Genzberger authorized, empowered and directed *his* tenant, Johnson, to have the necessary plumbing and appliances installed in the building, and to that end to hire a competent plumber or firm of plumbers to furnish the materials and labor necessary for such purpose. Nor is there any allegation anywhere that Genzberger had authority to contract

for, or to authorize anyone to contract for, the work done by plaintiffs.

The account kept by plaintiffs shows that all work done and materials furnished were charged to "R. J. Johnson, agent." The account attached to the lien is different; it begins: "Sold to Gertrude Genzberger, Jennie G. Sternfels, and R. J. Johnson." Johnson was never the agent of the owners. It is not claimed that he was their ostensible agent. Upon the facts it could not be. (Sec. 7933, Rev. Codes 1921; *Hartt* v. *Jahn*, 59 Mont. 173, 196 Pac. 153; *State* v. *Tuffs*, 54 Mont. 20, 165 Pac. 1107; *Harris* v. *San Diego Flume Co.*, 87 Cal. 526, 25 Pac. 758.)

Johnson testified that he told Mr. Arnold that Meyer Genzberger would pay for it.

In view of the holding of the majority that Meyer Genzberger is not personally liable, I pass by other errors without discussion.

4. Assuming that Johnson's testimony, given in the case to which he was a party, was admissible in this, it appears the contract was void, and evidence of its terms was not admissible for any purpose. (*Dreidlein* v. *Manger*, 69 Mont. 155, 220 Pac. 1107, 1109.) Waiving that, it appears that Genzberger had the roof fixed in March and April, 1928, and paid for it. Johnson opened the rooming-house in May, 1928, and operated it as such practically all the first year he was there. In short, the testimony discloses without contradiction that at the beginning of the tenancy Genzberger and Johnson put the building in a tenantable condition, and Genzberger repaired all the plumbing then in the building, and paid for it. Nothing was said between them at that time to the effect that Johnson intended to turn the building into apartments and that Genzberger would pay for the plumbing. "At the time of the plumbing in 1928, the March 6, 1929, job was never thought of," Johnson testified. Can anything be clearer than that, in order to bolster up plaintiffs' case, it is necessary to rely upon the original contract which all must confess was from its inception null and void?

Johnson, in November or December, for the first time said he told Genzberger he was "going to turn the rooms into apartments, and wanted him to put the plumbing in, and he said he would take care of it." Plaintiffs did not have any conversation with Genzberger's principals on the subject at any time. They talked only with Johnson, the tenant. While Mr. Arnold testified that he saw Genzberger in the place while the work was going on a great many times, he did not at any time even speak to Gensberger.

5. When the plaintiffs closed their case, the defendants moved to strike from the evidence any reference to the contract made in the beginning between Genzberger and Johnson, an oral contract void under the laws of this state, on the ground that no evidence was admissible respecting it; and also moved to strike from the evidence all testimony of the plaintiff Arnold which purports to show oral declarations of Johnson relative to the terms of his agency, for the reason that the same is prohibited by section 10535, Revised Codes 1921, and is made incompetent by that section, and that the oral declarations of an agent are insufficient in law to prove agency. The court erroneously overruled these motions.

The court overlooked the fundamental basis of a cause of action here, especially when the action was designed to foreclose a mechanic's lien. A lien rests upon contract. There was no contract here which the law recognizes; on the contrary, the alleged contract was wholly void, and consequently not binding on anyone under the express terms of sections 7519 and 10613, Revised Codes 1921.

Section 7519 provides in part: "The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent: 1. An agreement that by its terms is not to be performed within a year from the making thereof. * * * 5. An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be

charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged.''

Section 10613 provides: ''In the following cases the agreement is invalid, unless the same or some note or memorandum thereof be in writing, and subscribed by the party charged, or by his agent; evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents.'' Then follow five subdivisions, 1 and 5 being identical with subdivisions 1 and 5 of section 7519.

In *Dreidlein* v. *Manger*, supra, we held that the expression ''invalid'' means null and void. ''Therefore the contract cannot be relied upon or furnish evidence for any purpose.'' The plain and unequivocal declaration of the statute is that evidence of the agreement cannot be received. The contract being declared void, the receipt of the evidence respecting its terms was prohibited.

6. Without Johnson's testimony the plaintiffs could not make even a prima facie case. Granting that otherwise his testimony was admissible under section 10606, Revised Codes 1921, section 10613, supra, prohibits any testimony respecting the void contract. It all harks back to the original negotiations. It cannot be said that the conversation Johnson claims to have had with Genzberger with respect to turning the rooming-house he was occupying into an apartment house was a new contract; at the most it could only be said it was an oral modification of the original ''contract,'' the modification also being void. Moreover, the assertion of Johnson that according to the contract, after the ''improvements'' he was making were completed he should be entitled to remain in the occupancy of the building for one year and thereupon he should have a lease in writing for five years, the terms not being agreed upon, doubly condemns the transaction; the understanding about the written lease being ''too vague, indefinite, and uncertain to form the basis for a contract.'' (*Monahan* v. *Allen*, 47 Mont. 75, 130 Pac. 768, 769.)

7. At the close of all the evidence Genzberger and the owners separately moved the court to compel the plaintiffs

to elect whether they sought to hold Genzberger as principal, or as agent, or the owners as principals by reason of the acts, or alleged acts, of Genzberger. The motion was denied. It should have been sustained. (*Klinger* v. *Modesto Fruit Co.*, 107 Cal. App. 97, 290 Pac. 127.)

8. The burden of proving the authority of an agent is upon the party dealing with him, where it is sought to hold the principal liable. Where either the nature or extent of the agent's authority is controverted, the burden is on the third party dealing with him to establish it. (1 Nichols on Evidence, 440.) This is peculiarly true with respect to the subagency of Johnson, supposed in the majority opinion. A person dealing with a special agent must at his peril ascertain the extent of the authority of the agent. (*Benema* v. *Union Central Life Ins. Co.*, 94 Mont. 138, 21 Pac. (2d) 69.) The supposition is utterly without foundation.

The agency must be proved by other evidence before the agent's acts and statements can be shown against the principal. At best such declarations are merely hearsay. (*United States Smelting etc. Co.* v. *Wallapai M. & D. Co.*, 27 Ariz. 126, 230 Pac. 1109, with many supporting authorities; *Toomey* v. *Casey*, 72 Or. 290, 142 Pac. 621.) The law is that the declarations of an agent are not competent to establish the fact of his agency. (*Nyhart* v. *Pennington*, 20 Mont. 158, 50 Pac. 413; *Lafourche Transp. Co.* v. *Pugh*, 52 La. Ann. 1517, 27 So. 958.) Genzberger was without power to authorize Johnson to do anything in the premises which would bind his principals; he had no authority to create a subagent under him. (See sec. 7972, Rev. Codes 1921.)

A lien must rest upon a contract debt, and the contract must be made directly or indirectly with the owners of the property. (*Pelton* v. *Minah Con. Min. Co.*, 11 Mont. 281, 28 Pac. 310; *Dewey Lumber Co.* v. *McQuirk*, ante, p. 294, 30 Pac. (2d) 475. It is not sufficient that the work enhanced the value of the property. (*Belnap* v. *Condon*, 34 Utah, 213, 97 Pac. 111, 23 L. R. A. (n. s.) 601.)

The only direction to do the work which plaintiffs had, or claim to have had, was from the verbal statement of Johnson that Genzberger told him (Johnson) to have it done and that Genzberger (not the owners) would pay for the job. In entering upon the work Arnold did not exercise even ordinary care. It is hornbook law that it was necessary for him to find out the extent of the "agent's" authority before he proceeded with the work. He did not even take the time to call up Genzberger's office, let alone communicate with the owners to find out whether Genzberger, to say nothing of Johnson, had the right to bind the owners. Knowing Johnson was a mere tenant, plaintiffs were bound to know that he, as a tenant, could not affect the title of the owners, and that only his leasehold interest, if any he had, could be affected by a lien for the work ordered done by the tenant. (Sec. 8342, Rev. Codes 1921; *Pelton* v. *Minah Con. Min. Co.*, supra; *Block* v. *Murray*, 12 Mont. 545, 31 Pac. 550; *Stenberg* v. *Liennemann*, 20 Mont. 457, 52 Pac. 84, 63 Am. St. Rep. 636; *Dewey Lumber Co.* v. *McQuirk*, supra.)

9. Able to prove the contract with Johnson only, unable to prove that any agent authorized the work, plaintiffs were driven to rely upon the theory that the owners and Genzberger, their agent, by reason of their acts are estopped from denying liability for the work done and materials furnished, and they pleaded equitable estoppel, or estoppel *in pais*. They did not, and cannot, prove it. Such an estoppel arises only "when one by his acts, representations or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts." (21 C. J. 1113.)

To establish an estoppel, the party relying upon it must show that he was misled to his prejudice by the acts of his opponent. (*Rate* v. *American S. & R. Co.*, 56 Mont. 277, 184 Pac. 478; *Yellowstone County* v. *First Trust & Savings Bank*,

46 Mont. 439, 128 Pac. 596.) The plaintiffs' case is wholly barren of testimony which brings the plaintiffs within the rules just laid down.

The terms estoppel (equitable or *in pais*) and ratification are sometimes used in a way which seems to ignore any distinction between them. "The distinction between a contract intentionally assented to, or ratified in fact, and an estoppel to deny the validity of the contract, is very wide. In the former case, the party is bound, because he intended to be; in the latter, he is bound notwithstanding there was no such intention, because the other party will be prejudiced and defrauded by his conduct unless the law treat him as legally bound." (*Forsyth* v. *Day*, 46 Me. 176; 21 C. J. 1115.) "In the one case, the party is bound because this contract contains the necessary ingredients to bind him, including a consideration. In the other, he is not bound for these reasons, but because he has permitted the other party to act to his prejudice under such circumstances that he must have known, or be presumed to have known, that such party was acting on the faith of his conduct and acts being what they purported to be, without apprising him to the contrary." (*Forsyth* v. *Day*, supra; *Conway National Bank* v. *Pease*, 76 N. H. 319, 82 Atl. 1068.)

If the plaintiffs intended to rely upon ratification, it was necessary for them to plead it (*Smith* v. *Barnes*, 51 Mont. 202, 149 Pac. 963, Ann. Cas. 1917D, 330; *Bybee* v. *White*, 35 N. M. 270, 295 Pac. 295; *Stenson* v. *Lancaster*, 178 Mo. App. 340, 165 S. W. 1158; *Purkey* v. *Harding*, 23 S. D. 632, 123 N. W. 69), which they did not do. If they had pleaded it, the burden of proving it was upon them. (*Stanton* v. *Occidental Life Ins. Co.*, 81 Mont. 44, 261 Pac. 620; *Marion Savings Bank* v. *Leahy*, 200 Iowa, 220, 204 N. W. 456.) The testimony discloses that Genzberger and his wife were without the state of Montana from the second day of February, 1929, continuously until the thirtieth day of March, 1929, and that when they returned over half the work which Johnson had employed plaintiffs to do was done. None of the defendants knew anything of it before their return. The owners did not know

anything of the alterations made by plaintiffs at Johnson's instance at any time before the lien was filed.

It is useless for plaintiffs to contend that the owners were bound by silence or acquiescence under the facts. Mere silence is of no consequence unless the person sought to be bound was silent when he should have spoken. And there is nothing here to show that the owners knew anything about plaintiffs' work or that plaintiffs were looking to them for payment, until after the lien was filed. To acquiesce is to forbear decision or complaint; we may acquiesce in an act without approving it. (*Marion Savings Bank* v. *Leahy,* supra.) Assuming merely for the sake of the argument that the doctrine of ratification has some application here and for the purpose of deciding the question on the merits rather than upon the plaintiffs' failure to plead that issue, we call attention to section 7940, Revised Codes 1921, which provides: "A ratification can be made only in the manner that would have been necessary to confer an original authority for the act ratified, or where an oral authorization would suffice, by accepting or restraining the benefit of the act, with notice thereof." In *Koerner* v. *Northern Pacific Ry. Co.,* 56 Mont. 511, 186 Pac. 337, 340, this court said: "To constitute a ratification there must be an acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances."

After quoting section 7940, this court, in *Pew* v. *McLeish,* 62 Mont. 437, 205 Pac. 235, said: "This court in *Koerner* v. *Northern Pacific Ry. Co.* [supra], 56 Mont. on page 520, 186 Pac., on page 340, gave its latest interpretation of the above section, as follows: ' "Ratification" is defined to be the confirmation of a previous act done either by the party himself or by another. (23 Am. & Eng. Ency. of Law, 889; 33 Cyc. 1529.) And a confirmation necessarily supposes knowledge of the thing ratified. * * * [Citing the *Weidenaar Case.*] It follows that to constitute a ratification there must be an acceptance of the results of the act with an intent to ratify and with full knowledge of all the material circumstances.' "

In *Pew* v. *McLeish* there is a quotation from *Combs* v. *Scott*, 12 Allen (Mass.), 497, as follows: "Ratification of a past * * * transaction, into which an agent has entered without authority, is a purely voluntary act on the part of a principal. No legal obligation rests upon him to sanction or adopt it. No duty requires him to make inquiries concerning it. Where there is no legal obligation or duty to do an act, there can be no negligence in an omission to perform it. The true doctrine is well stated by a learned text-writer: 'If I make a contract in the name of a person who has not given me an authority, he will be under no obligation to ratify it, nor will he be bound to the performance of it.' (1 Livermore on Agency, 44; see, also, Paley on Agency, 171 note *o*.) Whoever, therefore, seeks to procure and rely on a ratification, is bound to show that it was made under such circumstances as in law to be binding on the principal, especially to see to it that all material facts were made known to him. The burden of making inquiries and of ascertaining the truth is not cast on him who is under no legal obligation to assume a responsibility, but rests on the party who is endeavoring to obtain a benefit or advantage for himself. This is not only just, but it is practicable."

Ratification, being purely a voluntary act upon the part of the principal, ordinarily requires some positive act. No duty rests upon him to adopt it or to make inquiries concerning it. In order that acquiescence alone should become ratification, the delay must be so long continued that it can be accounted for only on the theory that there has been some affirmative act. (*American Bank & Trust Co.* v. *Farmers' Elevator & Milling Co.*, 63 Mont. 612, 208 Pac. 594.)

But plaintiffs ingeniously attempt to obviate this well-known rule by saying that the owners accepted and retained the benefits. How did the owners come to retain the benefits? This the majority opinion does not disclose. The fact is that the plaintiffs finished the work (which was commenced March 6, 1929, when Genzberger was away from home, and which was over half done when he returned) on August 15, 1929, and

Johnson stayed in exclusive possession of the premises, so far as the owners were concerned, until after the 1st of October, 1929, when he quit the premises pursuant to notice, for the reason that he was in arrears for the payment of rental for several months. He then disposed of the furnishings in the place to a Mrs. Brown, who rented the premises from Genzberger.

That aside, a complete answer to the "retention of benefits" argument is that if the work and labor done and material furnished in altering or repairing a building without the owner's authority is such that the owner cannot be placed *in statu quo,* without loss, or if the continued enjoyment of the benefit is unavoidable, as where in taking, using or disposing of a building or other thing he unavoidably enjoys the benefit or work or materials furnished or repairs or improvements made, there is no ratification on his part. (2 C. J. 496, 497.) Thus in *Mott* v. *Wright,* 43 Cal. App. 21, 184 Pac. 517, 520, it was said: "It is lastly contended that, because the materials and the labor were furnished with the knowledge and consent of Wright, an implied contract arose between the claimants and Wright, and that, having received the benefit of the labor performed and the materials furnished, Wright ought in equity and good conscience to be held to be personally liable and compelled to pay the appellants their claims. There are two answers to this proposition, viz.: (1) * * * There was no contract, either express or implied, between the material men and the laborers and the owners. There was, therefore, no privity of contract between the defendant Wright and the several lien claimants. Obviously, to sustain an action against Wright, it must be upon the theory that he is personally liable, and to render him personally liable, there must be shown to exist a contract, express or implied, or a contractual privity, between him and those claiming lien. (2) * * * There is no allegation in either count of the complaints that the materials were furnished for and the labor done on the building at the direct instance of Frank E. Wright, the owner, or at his instance at all."

As was said in *Mills* v. *Berla*, (Tex. Civ. App.) 23 S. W. 910, 911, where the circumstances were substantially the same as here, "It does not appear that the work done by appellees upon the building was of such a character that it could be removed or separated from it. It would not follow that by using the building afterward, and thereby unavoidably having the benefit of the work and material furnished, the owner would be subject to liability for the value thereof."

In *Moyle* v. *Congregational Society*, 16 Utah, 59, 50 Pac. 806, 809, in addressing itself to this question, the court said: "It is well established that the ratification of an unauthorized act of any agent, in order to be effectual and binding on the principal, must have been made with full knowledge of all material facts; and ignorance, mistake or misrepresentations of any of the essential circumstances relating to the transaction alleged to have been ratified will absolve the principal from all liability, by reason of the supposed adoption or assent to the previously unauthorized acts of the agent. (*Baldwin* v. *Burrows*, 47 N. Y. 199; *Bennecke* v. *Insurance Co.*, 105 U. S. 355 [26 L. Ed. 990]; *Dupont* v. *Wertheman*, 10 Cal. 354.) And, in adopting and ratifying what the principal had authorized the agent to do, he was not adopting and ratifying that which was unauthorized. (*Smith* v. *Tracy*, 36 N. Y. 79.) We are satisfied that the church did not, through its directors or building committee, ratify the alleged acts of Hollister. It is true, the church retains the structure built upon its real estate; but we know of no way by which the alleged work performed upon the church building can be segregated from it, and returned to the plaintiff. It does not follow that because the church used the building after its completion, thereby unavoidably having the benefit of the work and materials furnished, the church would therefore be liable for the value thereof." (And see *Woodruff* v. *Rochester & P. R. Co.*, 108 N. Y. 39, 14 N. E. 832.)

The only reasonable inference to be drawn from the evidence is that the retention of the benefit was forced upon the owners by reason of the continued occupancy of Johnson, the

character of the improvements, and the impossibility of restoring them to the plaintiffs without substantial injury to the building; not because of any desire or intention to affirm the acts of Johnson. There is no suggestion in pleading or proof that the owners by any affirmative act accepted the benefits of plaintiffs' work after knowing that the plaintiffs were looking to them for payment, other than by "retaining" the benefits and not making an offer to restore them. In the circumstances it was practically impossible for them to have done so. The labor and materials went into the building in the process of converting it from a rooming into an apartment house. It is clear that the materials cannot be restored to the plaintiffs without substantial injury to the property. The interior of the building was reconstructed. The lien itself shows that the materials which were placed in the building became fixtures. A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs; or embedded in it, as in the case of a wall; or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws. (Sec. 6669, Rev. Codes 1921.) The record shows that plaintiffs put in two toilets in the building—fixtures. The lien shows that five sinks were placed therein, and there were faucets, traps, vents, brass pipe, lead pipe, lead, oakum, unions, bushings, couplings, screws, and bolts used, together with cement, roofing compound, and the like. The sinks were, of course, attached to the building. Holes were made in the walls or floors to make them useful by reason of water conducted to the sinks and pipes to carry the water away. The lien indicates that the plumbing and fixtures placed in the building were affixed thereto and intended to be permanent. It does not appear that there was even a movable soap dish.

Inasmuch as it is the law that he who alleges ratification must plead it, the burden being upon him to prove it, if it were permissible to show that the materials could be removed without injury to the building, the obligation to prove it was upon the plaintiffs. But in any event there is not one scintilla of evidence showing that the owners intended to ratify,

or can in anywise be held to have ratified, anything whatsoever which the plaintiffs did, in whole or in part.

This case being in equity, and it being the duty of this court to review all questions of fact arising upon the evidence presented in the record (sec. 8805, Rev. Codes 1921), we have no hesitancy in saying that the preponderance of the evidence is that Johnson himself intended to pay plaintiffs for their work and labor and material furnished. It is uncontradicted that Johnson told the witness Charles Staples that he was paying the plaintiffs for their work and that they (the plaintiffs) had agreed to take the compensation for the plumbing out of the increased rent which Johnson was to receive from the premises by reason of the improvements he was having made.

It is not incumbent upon me to do for the plaintiffs that which they failed to do for themselves. My duty is to follow the law, which, as I see it, directs a judgment in favor of the defendants. The judgment should be reversed.

MR. JUSTICE ANGSTMAN: I concur in what is said above by MR. CHIEF JUSTICE CALLAWAY.

Rehearing denied April 14, 1934.